**FANTASY SPORTS PROPERTIES, INC., Plaintiff,**

v.

**SPORTSLINE.COM, INC.; Yahoo! Inc.; Espn, Inc.; Sandbox Entertainment Corp., Defendants.**

No. 2:99CV2131.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 27, 2000.

Michael A. Jacobs, Morrison & Foerster, San Francisco, CA, John P. Corrado, Mor-

rison & Foerster, Washington, DC, Walter D. Kelley, Jr., Willcox & Savage, Norfolk, VA, for Yahoo!, Inc.

## OPINION AND ORDER

FRIEDMAN, District Judge.

On December 28, 1999, Fantasy Sports Properties, Inc. ("FSPI") filed a complaint in this matter, alleging that defendants infringed on FSPI's patent. On March 13, 1999, defendant Yahoo! Inc. ("Yahoo!") filed a Motion for Summary Judgment of Noninfringement. After a hearing on the Motion, the Court took the matter under advisement. For the reasons stated below, defendant Yahoo!'s Motion for Summary Judgment of Noninfringement is GRANTED.

### Factual and Procedural Background

On April 17, 1990, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 4,918,603 ("the '603 patent") for the "Computerized Statistical Football Game." The '603 patent involves fantasy football, which is a game played by football fans who pretend to draft actual National Football League ("NFL") players to assemble their own fantasy football teams. The fantasy player receives points based upon their drafted players' performance in actual NFL games. Each week, the fantasy player's team would receive "fantasy points" based upon the game performance of actual football players. The '603 patent includes three claims: independent claim 1 and dependent claims 2 and 3. Independent claim 1 states as follows:

A computer for playing football based upon actual football games, comprising:

means for setting up individual football franchises;

means for drafting actual football players into said franchises;

means for selecting starting player rosters from said actual football players;

means for trading said actual football players;

means for scoring performances of said actual football players based upon actual game scores such that franchises automatically calculate a composite win or loss score from a total of said individual actual football players' scores;

said players' scores are for quarterbacks, running backs and pass receivers in a first group and kickers in a second group; and

wherein said players in said first and second groups receive bonus points.

Col. 16, ll. 11–28.

FSPI alleges that Yahoo! "has infringed at least claims 1 and 2 of the '603 Patent through, among other activities, the operation, promotion, use, sale and offer for sale of services relating to 'Yahoo! Fantasy Football.'" Complaint, at ¶ 10.

At issue in this Motion is independent claim 1's limitation "wherein said players in said first and second groups receive bonus points." Col. 16, ll. 27–28. The patent specification states that "computerized football points are awarded for touchdowns, field goals, and points after touchdowns," whereas, "[b]onus points also are awarded based upon the difficulty of the play. Factors contributing to the difficulty measure include yardage and the rarity of play." Col. 13, ll. 20–25. The patent specification states that bonus points are awarded under the following circumstances: 1) a quarterback "who receives a pass or runs for the touchdown," col. 13, ll. 44–45; 2) a running back "when he has either thrown or received the touchdown pass," col. 13, ll. 45–46; 3) a pass receiver "for passing the ball or running for the touchdown," col. 13, ll. 48–49; 4) "fumbles that result in touchdowns," col. 13, ll. 61–62; 5) "lateral recoveries in the end zone," col. 13, ll. 62–63; and 6) "when a kicker scores a touchdown." Col. 14, l. 6. The central issue in dispute on Yahoo!'s Motion for Summary Judgment is the awarding of bonus points when a kicker scores a touchdown.

During the prosecution of the '603 patent, the applicants disclosed to the PTO

several prior art publications, including the "All–Pro Yearbook—1987," which is referred to in the history as the "Fantasy Football Magazine." *See* Information Disclosure Statement. During the prosecution of the '603 patent, the patent examiner rejected numerous claims as unpatentable over the 1987 Fantasy Football Magazine. *See* Office Action. The patent examiner stated that "Claims 13–15 [now claims 1–3] are found allowable over cited art since the Examiner fails to find reference to award of bonus points for players of first and second groups in the prior art." *Id.*, at 11. In their response amendment, the applicants incorporated the "bonus points" limitation into the amended claims and did not refute the conclusion that "bonus points" as used in the claims of the '603 patent were not disclosed in the 1987 Fantasy Football Magazine prior art. *See* Amendment, at 2, 6.

The Yahoo! 1999 Fantasy Football game does include the award of "miscellaneous points" to kickers who score touchdowns: "Points coming from categories not normally associated with a player's position (e.g., a kicker who throws a touchdown pass) are called miscellaneous points and are indicated by an * to the right of a player's point total." Yahoo! Sports Fantasy Football (visited Dec. 12, 1999) <http: www.yahoo.com/ football/ frules>. During the hearing, Yahoo! asserted that the designation of a point as a "miscellaneous point" with the addition of an * served merely as a presentation mechanism and not as a scoring mechanism. "Miscellaneous points" are not additional points for a particular play, they simply appear with an * on a player's score sheet. Yahoo!'s 1999 Fantasy Football game awards points according to the result achieved and not based on a player's position.

Yahoo! has offered Fantasy Football only since 1998. During 1998, Yahoo!'s game was owned and operated by co-defendant Sandbox Entertainment Corp. ("Sandbox"). During 1999, Yahoo! owned and operated its own game. There are two separate fantasy football games involved in Yahoo!'s Motion for Summary Judgment: 1) Yahoo!'s 1999 Fantasy Football game; and 2) Sandbox's 1998 Full Fantasy Football game. The reference to "miscellaneous points" is only found in Yahoo!'s 1999 game and not in Sandbox's 1998 game.

The prior art 1987 Fantasy Football Magazine's scoring system is based on the principle that "[i]f your player scores, you get points." *See* Yahoo!'s Exh. C, at 2. It utilizes the "basic scoring system, awarding points as follows: "touchdown = 6 points; field goal = 3 points; extra point = 1 point; and, safety = 2 points." *Id.* It also allows for variations, such as allowing points for yardage as well as scoring. *See id.* The patent examiner considered the 1987 Fantasy Football Magazine in concluding that the prior art did not contain a reference to "bonus points for players of first and second groups." Office Action, at 11. Accordingly, none of the scoring methods disclosed in the 1987 Fantasy Football Magazine prior art award bonus points in a manner contemplated by the '603 patent.

### Analysis

#### I. Standard of Review

In patent cases, as well as in all other cases, summary judgment is appropriate when it is apparent from the entire record, viewed in light most favorable to the non-moving party, that there are no genuine disputes of material fact. *See, e.g., Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When a court declines to grant summary judgment, sufficient evidence must exist favoring the nonmoving party which would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

██ A properly supported motion for summary judgment may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–48, 106 S.Ct. 2505. The requirement is that there are no genuine issues of material fact. *See id.* Entry of summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Although an infringement analysis usually involves both questions of fact and issues of law, summary judgment of noninfringement may still be proper. *See Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1571 (Fed.Cir.1986). A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *See Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 546 (Fed.Cir.1994).

## II. Yahoo!'s Motion for Summary Judgment

██ Claim construction is a matter of law for the court to decide. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claims are construed from the perspective of a person of ordinary skill in the art at the time of the invention. *Id.* at 986. Determination of infringement is a two-part analytic procedure, whereby the claims are first construed as a matter of law, and then the claims are applied to the accused device, a question of fact. *See EMI Group North America, Inc. v. Intel Corp.,* 157 F.3d 887, 891 (Fed.Cir.1998); *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1476 (Fed.Cir.1998). Factual questions of infringement are of-

ten resolved by the court's construction of the claims. *See Markman,* 52 F.3d at 989 (Mayer, J., concurring) ("to decide what the claims mean is nearly always to decide the case"). "Where the parties do not dispute any relevant facts regarding the accused product, ... but disagree over possible claim interpretations, the question of literal infringement collapses into [one of] claim construction and is amenable to summary judgment." *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 983 (Fed.Cir.1997); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir.1996); *see also Phonometrics, Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1464 (Fed.Cir.1998) ("Disputes concerning the meaning of claims do not preclude summary judgment, because the resolution of those disputes is part of the process of claim interpretation, a matter of law.").

██ It is well-settled that in interpreting a disputed claim, the Court must look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *See Markman,* 52 F.3d at 979. "Such intrinsic evidence is the most significant source of legally operative meaning of the disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). First, the Court must look to the words of the claims themselves to define the scope of the patented invention. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620 (Fed.Cir. 1995). "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning ...." *Vitronics,* 90 F.3d at 1582; *see also Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1563 (Fed.Cir. 1990) ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer and thus may use terms in a manner contrary to or

inconsistent with one or more of their ordinary meanings." (citations omitted)).

Second, the Court must always review the patent specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. *See Vitronics*, 90 F.3d at 1582. "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Markman*, 52 F.3d at 979. The Court of Appeals for the Federal Circuit has repeatedly stated that "[c]laims must be read in view of the specification, of which they are a part." *Id.* The patent specification is a written description of the invention itself which must be clear and complete enough to enable those of ordinary skill in the relevant art to make and use the invention. Therefore, the patent specification is not only highly relevant to claim construction, it is usually dispositive and is referred to as "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

Third, the Court should also consider the patent's prosecution history, if, as here, it is in evidence. *See Markman*, 52 F.3d at 980. The prosecution history is essentially the complete record of the proceedings before the PTO, and as such, the prosecution history is often of critical significance in claim construction. *See id.* An analysis of the prosecution history may include any express representations made by the applicant regarding the scope of the claims and an examination of any of the prior art cited. *See Vitronics*, 90 F.3d at 1583; *Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 399 (1967). It is appropriate for the Court to consider not only the changes made during prosecution, but also the reason for the changes. *See Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 703 (Fed.Cir.1990) ("A close examination must be made as to not only what was

surrendered, but also the reason for such a surrender."). Prosecution history "limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995) (holding that statements made during the prosecution history may commit the applicant to a particular meaning for a patent term, which meaning is then binding in litigation).

■ In most disputes over claim construction, an analysis of the intrinsic evidence alone will resolve any ambiguities. Reliance on extrinsic evidence [1] is improper except in circumstances where analysis of the intrinsic evidence leaves the disputed claim term unclear. *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705–06 (Fed.Cir.1997); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed.Cir.1995). In *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709 (Fed.Cir.1998), the Court of Appeals for the Federal Circuit noted that this "court has made strong cautionary statements on the proper use of extrinsic evidence," and further clarified that "[w]hat is disapproved of is an attempt to use extrinsic evidence to arrive at a claim construction that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Id.* at 716.

■ Yahoo! is not requesting a complete construction of the term "bonus points." Yahoo! is asking the Court to determine that, regardless of how the term "bonus points" is defined, it cannot be defined to include concepts or scoring that were disclosed in the 1987 Fantasy Football Magazine prior art reference. *See Vivid Technologies, Inc. v. American Sci-*

---

**1.** "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dic-

tionaries, and learned treatises." *Markman*, 52 F.3d at 980.

ence & Eng'g, 200 F.3d 795, 803 (Fed.Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"). The construction issue before the Court, therefore, is a narrow one.[2]

To demonstrate that the accused games literally infringe claim 1 of the '603 patent, FSPI must establish that Yahoo!'s system contains every limitation of the claim. See Lemelson v. United States, 752 F.2d 1538, 1551 (Fed.Cir.1985). "It is also well settled that each element of a claim is material and essential," id., and "the failure to meet a single limitation is sufficient to negate infringement of the claim." Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed.Cir.1991). Accordingly, if Yahoo!'s system does not include the award of "bonus points" as stated in claim 1 of the '603 patent, or, in the alternative, if Yahoo!'s scoring algorithm includes only scoring as disclosed in the 1987 Fantasy Football Game prior art, then Yahoo!'s system does not infringe on the '603 patent. See Lemelson v. General Mills, Inc., 968 F.2d 1202, 1208 (Fed.Cir.1992) (holding that absent sufficient evidence to support the conclusion that the accused device is distinguishable from the prior art, the accused device could not be found to meet all of the limitations in the patent at issue, either literally or by the doctrine of equivalents). If Yahoo!'s accused products do not incorporate the "bonus points" limitation as recited in claim 1, then Yahoo! cannot, as a matter of law, be found to infringe any claim of the '603 patent.[3]

The '603 patent itself defines the term "bonus points." As stated in Markman, "[t]he specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." Markman, 52 F.3d at 979. The specification states that "bonus points" are points awarded in addition to "computerized football points ... awarded for touchdowns, field goals, and points after touchdowns." Col. 13, ll. 20–22. The specification states explicitly that "bonus points also are awarded based upon the difficulty of the play." Col. 13, ll. 22–23 (emphasis added). Factors contributing to the level of difficulty include "yardage and the rarity of the play." Col. 13, ll. 24–25. The patent states that players in the first and second groups are awarded bonus points based on "1.5 times the normal value for that score." Col. 14, ll. 7–8; see also col. 13, ll. 50–51.

The prosecution history in this case, however, is the most relevant piece of intrinsic evidence pertaining to the construction of "bonus points." In allowing the independent claim at issue, the PTO explicitly stated that the claim was allowable over the prior art, including the 1987 Fantasy Football magazine, because "the Ex-

2. FSPI argues that the early stage of the proceedings and the resulting lack of discovery prevents the Court from construing the claim at this stage in the litigation. The Federal Circuit has given courts discretion to set the time for claim interpretation. See Sofamor Danek Group, Inc. v. DePuy–Motech, Inc., 74 F.3d 1216, 1221 (Fed.Cir.1996); see also Vivid Techs. Inc. v. American Science & Eng'g, Inc., 997 F.Supp. 93, 95 (D.Mass.1997) (holding that claim construction prior to discovery was appropriate, reasoning that claim construction early in the management of a case may enable the parties and the court to focus discovery in a way that makes more efficient use of party and court resources as the case proceeds). As the Court is able to resolve this Motion for Summary Judgment of Noninfringement based on the intrinsic evidence alone, additional discovery is not needed, and the public record of the patent likely will not change between filing and trial. Further, the scoring of the games at issue is already disclosed on Yahoo!'s website. See Yahoo! Sports Fantasy Football (visited Dec. 12, 1999) <http:www.yahoo.com/football/frules>.

3. It is well established that where independent claims are not infringed, there can be no infringement of the dependent claims. See Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed.Cir.1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."). Therefore, the Court need only address the independent claim at issue in order to resolve this case completely.

aminer fails to find reference to the award of bonus points for players of first and second groups in the prior art." Office Action, at 11. In their response amendment, the applicants incorporated the "bonus points" limitation into the amended claims and did not refute the conclusion that "bonus points" as used in the claims of the '603 patent were not disclosed in the 1987 Fantasy Football Magazine prior art. *See* Amendment, at 2, 6.

There is no reference whatsoever to either bonus points or to "miscellaneous points" in Sandbox's 1998 Full Fantasy Football game. As the remaining claims of the '603 patent were allowed solely because the reference to bonus points served as the distinguishing factor from the prior art, Sandbox's 1998 Full Fantasy Football game does not infringe on the '603 patent because the Sandbox game does not award bonus points. Therefore, summary judgment is appropriate with regard to Sandbox's 1998 Full Fantasy Football game.

The Yahoo! 1999 Fantasy Football game includes the award of "miscellaneous points" to kickers who throw touchdowns: "Points coming from categories not normally associated with a player's position (e.g., a kicker who throws a touchdown pass) are called miscellaneous points and are indicated by an * to the right of a player's point total." Yahoo! Sports Fantasy Football (visited Dec. 12, 1999) <http: www.yahoo.com/ football/ frules>. The mere placement of an * by points received does not change the value of the points. The "miscellaneous points" are not even mentioned in the scoring section of the Yahoo! Fantasy Football Rules and Instructions and are only mentioned in the "Roster Notes" section of the Rules and Instructions. *See id.* Yahoo! states that the "miscellaneous points" Yahoo! awards a kicker "scoring a touchdown" are exactly 6 points, the same points awarded to any

player scoring a touchdown. The prior art 1987 Fantasy Football Magazine only awards "basic" scoring points—and in this case, a kicker would receive, the same as any other player, 6 points for scoring a touchdown. *See* Yahoo!'s Exh. C, at 2.[4] The '603 patent specification states that a kicker may receive "bonus points" for scoring a touchdown, and "[t]he number of bonus points are based on 1.5 times the normal value for that score." Col. 14, ll. 6–8. Unlike the designation of "miscellaneous points" in the 1999 Yahoo! Fantasy Football game, the "bonus points" in the '603 patent are awarded *in addition* to the normal points for a scoring play.

FSPI's argument with regard to "bonus points" awarded for total yardage obtained similarly fails, as this method of scoring was clearly referenced in the 1987 Fantasy Football Magazine prior art. The prior art discusses the use of a "distance scoring" method, awarding points for yardage as well as scoring, and using a system to include every yard of total offense instead of a graduated scale. *See* Yahoo!'s Exh. C, at 2. In the prosecution history, the PTO specifically stated that the prior art references, including the 1987 Fantasy Football Magazine, did not award "bonus points for players of first and second groups," therefore these points based on yardage were not contemplated as bonus points. *See* Office Action, at 11. Similar claims initially raised by FPSI before the PTO, such as those based on the distance scoring method, were rejected for obviousness. *See id.* at 9.

In this case, "bonus points" are defined in the '603 patent itself, and the definition is further limited by the prosecution history, which essentially states that the scoring methods referenced in the prior art 1987 Fantasy Football Magazine are not bonus points as contemplated by claim 1 of the '603 patent. Yahoo!'s 1999 Fantasy

4. FSPI argues that "[p]oints awarded to a kicker for scoring a touchdown are not disclosed in the prior art *Fantasy Football Magazine.*" FSPI's Brief, at 8. However, this assertion is based on the declaration of Patrick Hughes, FSPI's president, *see id.,* and is contradicted by the plain language of the 1987 Fantasy Football Magazine.

Football game's reference to "miscellaneous points" is only applied as a label for purposes of the roster, and the regular points for scoring are still awarded for the plays. As Yahoo!'s 1999 Fantasy Football game does not award bonus points as described in the claim language of the '603 patent, summary judgment is appropriate. Yahoo!'s scoring algorithm contains no elements that are not present in the prior art 1987 Fantasy Football Magazine, so there can be no infringement of the '603 patent. The Sandbox 1998 Full Fantasy Football game does not infringe on the '603 patent as there is not even a reference to "bonus points" or their equivalent in the scoring. Both Yahoo!'s 1999 Fantasy Football game and Sandbox's 1998 Full Fantasy Football game award 6 points to a kicker who scores a touchdown, while the '603 patent awards bonus points in the amount of 1.5 times the normal value for that score in addition to the score for the touchdown itself. Accordingly, Yahoo!'s Motion for Summary Judgment of Noninfringement is **GRANTED.**

### Conclusion

For the reasons stated above, Yahoo!'s Motion for Summary Judgment of Noninfringement is **GRANTED.**

The Clerk is **REQUESTED** to send copies of this Opinion and Order to counsel for all parties.

It is so **ORDERED.**