287 F.3d 1108
 FANTASY SPORTS PROPERTIES, INC., Plaintiff-Appellant,
v.
SPORTSLINE.COM, INC., Defendant-Appellee, and
Yahoo! Inc., Defendant-Cross Appellant, and
ESPN/Starwave Partners (doing business as ESPN Internet Ventures and EIV Ventures), Defendant-Appellee.
 No. 01-1217.
 No. 01-1222.
 United States Court of Appeals, Federal Circuit.
 April 24, 2002.
 Rehearing Denied June 14, 2002.
 
 COPYRIGHT MATERIAL OMITTED Dean D. Niro, Niro, Scavone, Haller & Niro, of Chicago, IL, argued for plaintiff-appellant. With him on the brief was Raymond P. Niro. Of counsel was William L. Niro.
 Barry G. Magidoff, Greenberg Traurig LLP, of New York, NY, argued for defendant-appellee Sportsline.Com, Inc. With him on the brief was Paul J. Sutton.
 Thomas H. Shunk, Baker & Hostetler, LLP, of Cleveland, OH, argued for defendant-appellee ESPN/Starwave Partners (dba ESPN Internet Ventures & EIV Ventures).
 Michael A. Jacobs, Morrison & Foerster LLP, of San Francisco, CA, argued for defendant-cross appellant. With him on the brief was John P. Corrado, of Washington, DC.
 Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.
 LOURIE, Circuit Judge.
 
 
 1
 Fantasy Sports Properties, Inc. appeals from the decisions of the United States District Court for the Eastern District of Virginia granting SportsLine.com, Inc.'s, Yahoo! Inc.'s, and ESPN/Starwave Partners' (collectively, "the defendants'") motions for summary judgment of noninfringement of Fantasy's U.S. Patent 4,918,603. Fantasy Sports Props., Inc. v. Sportsline.com, Inc., 103 F.Supp.2d 886 (E.D.Va.2000) (granting summary judgment in favor of Yahoo!) ("Fantasy I"); Fantasy Sports Props., Inc. v. SportsLine.com, Inc., No. 2:99cv2131 (E.D.Va. Jan. 25, 2001) (granting summary judgment in favor of SportsLine and ESPN) ("Fantasy II"). Yahoo! cross-appeals the court's denial of its motion for attorney fees and costs, Fantasy Sports Props., Inc. v. SportsLine.com, Inc., No. 2:99cv2131 (E.D.Va. Jan. 25, 2001) ("Fantasy III"), and also moves this court on appeal to strike certain material included by Fantasy in the joint appendix. Because the district court did not err in determining that Yahoo! and ESPN do not infringe as a matter of law and in denying Yahoo's motion for attorney fees and costs, we affirm those decisions. Because, however, we conclude that there exists a genuine issue of material fact as to whether SportsLine's Commissioner.com product infringes the '603 patent, we vacate the court's grant of summary judgment of noninfringement with respect to that product and remand for further proceedings.
 
 BACKGROUND
 
 2
 Fantasy is the assignee of the '603 patent, which relates to a method of and apparatus for playing a "fantasy" football game on a computer. '603 patent, col. 1, II.6-11. The game is played by a number of "owners" or "managers" who operate fantasy "teams" or "franchises" based on actual football players. Points are awarded to each team based upon the performance of its players in actual professional football games for categories such as touchdowns, field goals, and points after touchdowns ("PATs"). The total points for each team are tabulated utilizing a database containing the relevant statistics for each player, which is automatically updated after the actual football games are played each week. The specification teaches that in addition to the standard points given for a particular play in an actual game, "bonus points" may be awarded based upon, inter alia, "the difficulty of the play." Id. at col. 13, II.22-25.
 
 
 3
 Claim 1 of the '603 patent is the only independent claim at issue, and it reads as follows:
 
 
 4
 1. A computer for playing football based upon actual football games, comprising:
 
 
 5
 means for setting up individual football franchises;
 
 
 6
 means for drafting actual football players into said franchises;
 
 
 7
 means for selecting starting player rosters from said actual football players;
 
 
 8
 means for trading said actual football players;
 
 
 9
 means for scoring performances of said actual football players based upon actual game scores such that franchises automatically calculate a composite win or loss score from a total of said individual actual football players' scores;
 
 
 10
 said players' scores are for quarterbacks, running backs and pass receivers in a first group and kickers in a second group; and
 
 
 11
 wherein said players in said first and second groups receive bonus points. Id. at col. 16, II.11-28 (emphasis added). The claim interpretation dispute in this appeal centers around the "bonus points" limitation.
 
 
 12
 Fantasy filed suit against the defendants alleging that the defendants' computerized fantasy football games infringed the '603 patent.[1] Fantasy I, 103 F.Supp.2d at 887. Yahoo! filed a motion for summary judgment of noninfringement, arguing that its Yahoo! Sports Fantasy Football game does not satisfy the "bonus points" limitation. Id. The district court interpreted the "bonus points" limitation to mean points that are awarded "in addition to the normal points for a scoring play," id. at 892, and determined that Fantasy disclaimed any game that awards additional points for distance scoring and total yardage by amending claim 1 to add the "bonus points" limitation in order to overcome a rejection based upon a prior art publication entitled "All-Pro Yearbook — 1987" ("the 1987 article"), id. at 888. Based on that construction, the court granted summary judgment that Yahoo!'s product does not infringe the patent as a matter of law because, except for the additional points awarded based on yardage, it only awards points equal to the points given in an actual professional football game. Id. at 888-89.
 
 
 13
 ESPN and SportsLine thereafter filed separate motions for summary judgment of noninfringement based on the claim construction set forth in Fantasy I. The court clarified its previous construction of the term "bonus points" to mean "additional points, above and beyond standard scoring, that are based upon the difficulty of the play," i.e., "for scoring plays not typically associated with the position of the scoring player." Fantasy II, slip op. at 4-5. The court then determined that ESPN's Fantasy Football game did not infringe as a matter of law because that product does not award additional points for "out-of-position" scoring (e.g., a running back throwing a touchdown pass). Id. at 19-20. The court also granted summary judgment of noninfringement with respect to SportsLine's Fantasy Football and Football Challenge games because it determined that those products awarded additional points based only upon yardage. Id. at 10-11. Finally, the court determined that SportsLine's Commissioner.com product could not directly infringe because it found that the Commissioner.com is not a fantasy football game, but rather is a "software tool by which [subscribers] operate their own fantasy football leagues on customized internet Web pages." Id. at 11. The court also rejected Fantasy's contributory infringement argument because it determined that Fantasy failed to prove that any subscriber actually operated the Commissioner.com in an infringing manner. Id. at 15.
 
 
 14
 Yahoo! thereafter filed a motion for attorney fees and costs. The district court denied Yahoo!'s motion because it determined that Yahoo! failed to demonstrate by clear and convincing evidence that this case was exceptional within the meaning of 35 U.S.C. § 285. Fantasy III, slip op. at 3. The court reasoned that although Fantasy "applied a flawed, overly expansive interpretation of the scope of the '603 patent to Yahoo!'s fantasy football products," its allegations "were not so frivolous as to constitute a Rule 11 violation." Id. at 4.
 
 
 15
 Fantasy appeals from the district court's grant of summary judgment of noninfringement as to each of the defendants. Yahoo! cross-appeals the court's denial of its motion for attorney fees and costs, and moves this court to strike certain evidence relevant to its cross-motion that Fantasy included in the joint appendix on appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
 
 DISCUSSION
 
 16
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of a motion for summary judgment de novo. Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).
 
 
 17
 A determination of infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... and then the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed. Cir.1998) (en banc) (citations omitted). Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review de novo, Cybor, 138 F.3d at 1456, 46 USPQ2d at 1172. Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985) (en banc). Finally, we review a district court's decision declining to award attorney fees for an abuse of discretion. Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359, 51 USPQ2d 1466, 1468 (Fed.Cir.1999).
 
 A. Claim Construction
 
 18
 Fantasy argues that the "bonus points" limitation should be broadly construed to cover any points awarded in addition to those given in an actual football game. Fantasy contends that the plain meaning of the term "bonus" is "anything given in addition to the customary or required amount," and that nothing in claim 1 limits that term to any specific type of additional points. Fantasy also argues that it did not disclaim coverage of all the bonus points discussed in the 1987 article because it distinguished that reference during prosecution on the grounds that it did not utilize a computer and did not disclose the combination of awarding bonus points and using two separate groups of players for scoring purposes. Fantasy further contends that the specification makes clear that the term "bonus points" includes non-scoring plays, such as total yardage, because it states that "[b]onus points are ... awarded based upon the difficulty of the play," not the scoring play. Finally, Fantasy argues that the doctrine of claim differentiation dictates that a broader construction must be given to claim 1 because claim 2 limits the definition of the term "bonus points" to "complex or difficult plays," and claim 3 defines that limitation in terms of specific examples, e.g., "extra points for a quarterback who receives or runs for [a] touchdown."
 
 
 19
 The defendants respond that the term "bonus points" means additional points awarded beyond those given in an actual football game for scoring plays in which a player scores out of position. The defendants argue that the prosecution history clearly shows that the examiner interpreted the "bonus points" limitation to exclude the scoring methods disclosed in the 1987 article, and that Fantasy acquiesced in that interpretation, thus surrendering a broader meaning for that term. The defendants also contend that, reading the specification as a whole, it is apparent that the "plays" that qualify for bonus points are scoring plays, and that therefore the "bonus points" limitation does not include points awarded for total yardage or any other non-scoring statistic. Finally, the defendants argue that the doctrine of claim differentiation must yield where, as here, the specification and prosecution history clearly define the scope of the invention.
 
 
 20
 We conclude that the term "bonus points" is limited to additional points awarded beyond those given in an actual football game for unusual scoring plays, such as when a player scores in a manner not typically associated with his position. "[T]he words of a claim are generally given their ordinary and accustomed meaning, unless it appears from the specification or the file history that they were used differently by the inventor." Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1577, 27 USPQ2d 1836, 1840 (Fed. Cir.1993). The specification states that "[c]omputerized football points are awarded for touchdowns, field goals, and points after touchdowns. Bonus points are also awarded based upon the difficulty of the play." '603 patent, col. 13, II.20-23 (emphases added). The term "bonus points" therefore must be construed to mean points that are awarded for a scoring play in addition to the points given for that scoring play in an actual football game.
 
 
 21
 Furthermore, the prosecution history in this case clearly demonstrates that Fantasy surrendered any interpretation of the term "bonus points" that encompasses the methodologies taught in the 1987 article for awarding additional points beyond those given in an actual football game. In the application that eventually led to the '603 patent, Fantasy set forth a number of claims that did not include the "bonus points" limitation and cited the 1987 article as prior art in an Information Disclosure Statement. The 1987 article discloses the concept of "fantasy football" and teaches how to organize a fantasy football game played on paper. That article also details a number of scoring methods that may be utilized in tabulating the total points for each fantasy franchise, including but not limited to assigning points for distance scoring and total yardage. The examiner rejected all but three of the claims in Fantasy's application over, inter alia, the 1987 article, and in doing so made a number of comments relevant to this appeal. First, the examiner noted that the "[u]se of a computer to store data previously maintained on paper files is well known." Paper No. 7 at 6. The examiner also stated that "grouping players ... is obvious since running backs and pass receivers form the offensive line, special teams line backers and defensive backs form the defensive line; and kickers perform kickoffs and field goals, functions which differ from that of both offensive and defensive teams."[2] Id. at 8-9. Finally, and most significant to the present appeal, the examiner rejected application claim 10, which incorporated the "computer" and "grouping" limitations by reference and added the further limitation that additional points are awarded "based upon the number of yards that were involved in the play that received a touchdown," because the 1987 article "discusses [the] use of a distance scoring method in which player scores are a function of the length of the play." Id. at 9. The examiner, however, also stated that claims 13-15, the only claims that contained the "bonus points" limitation at issue, "are found allowable over [the 1987 article] since the examiner fails to find reference to [the] award of bonus points for players of first and second groups in the prior art." Id. at 11. Fantasy, without comment, rewrote application claims 13-15 in independent form as suggested by the examiner, and those claims subsequently issued as claims 1-3 of the '603 patent.
 
 
 22
 Contrary to Fantasy's argument on appeal, the examiner found that the use of a computer to play fantasy football games and the organization of players in a first and second group were either known in the art or obvious therefrom. The examiner's rejection of claim 10 also demonstrates that he found the combination of one or more of those limitations with Fantasy's broad interpretation of the term "bonus points" to be unpatentable. Fantasy acquiesced in those rejections by canceling all claims that did not contain the "bonus points" limitation at issue on appeal, and thus cannot now be heard to argue post hoc that it was the combination of the aforementioned limitations that rendered its invention patentable over the prior art. Fantasy therefore disclaimed any interpretation of the term "bonus points" that encompasses scoring methods described in the 1987 article, including distance scoring and total yardage. See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") (citations omitted).
 
 
 23
 Fantasy's argument that the specification broadly defines the term "bonus points" to include non-scoring plays, such as total yardage, is not persuasive. Aside from the fact that the prosecution history defines the contours of the "bonus points" limitation, the portion of the specification cited by Fantasy must be read in context. The sentence "[b]onus points also are awarded based upon the difficulty of the play," id. at II. 22-23 (emphasis added), uses the word "play" in the context of the preceding sentence. That sentence states that "points are awarded for touchdowns, field goals, and points after touchdowns," id. at II. 20-22, all of which are scoring plays. Moreover, the specification makes clear elsewhere that only certain types of unusual plays are encompassed within the "bonus points" limitation, including, e.g.,: (1) when a quarterback "receives a pass or runs for [a] touchdown," '603 patent, col. 13, II. 44-45; (2) when a running back "throw[s] or receive[s a] touchdown pass," id. at II. 45-46; (3) when a wide receiver "pass[es] the ball or run[s] for [a] touchdown," id. at II. 47-49; (4) when a "fumble... result[s] in [a] touchdown[]," id. at II. 44-45; or (5) when a "lateral recover[y is made] in the end zone," id. Accordingly, in light of the specification and the prosecution history, we interpret the "bonus points" limitation to mean additional points awarded beyond those given in an actual football game for unusual scoring plays, such as when a player scores in a manner not typically associated with his position.
 
 
 24
 Finally, Fantasy's claim differentiation argument is without merit. The doctrine of claim differentiation creates only a presumption that each claim in a patent has a different scope that "can not broaden claims beyond their correct scope." Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1368, 53 USPQ2d 1814, 1818 (Fed.Cir.2000) (citation omitted). Although claims 2 and 3 attempt to further define the term "bonus points," that presumption is overcome by Fantasy's disclaimer of subject matter in the prosecution history. See id. at 1368-69, 53 USPQ2d at 1818-19 (determining that any presumption arising from the doctrine of claim differentiation was overcome by the written description and prosecution history). Consequently, the "bonus points" limitation must be given the same scope in all of the claims of the '603 patent.
 
 
 25
 We therefore conclude that the "bonus points" limitation must be construed to mean additional points awarded beyond those given in an actual football game for unusual scoring plays, such as when a player scores in a manner not typically associated with his position.
 
 B. Infringement
 
 26
 Although most of Fantasy's infringement argument on appeal depends upon its proposed construction of the "bonus points" limitation, Fantasy argues that genuine issues of material fact exist that preclude entry of summary judgment of noninfringement as to each of the defendants' products even under the district court's claim construction. Because our interpretation of the term "bonus points" differs slightly from that of the district court, we will analyze whether summary judgment was properly granted as to each of the defendants' products under our construction of that term.
 
 
 27
 1. Yahoo!
 
 
 28
 Fantasy argues that the Yahoo! Sports Fantasy Football game infringes the '603 patent because it awards "miscellaneous points" when a kicker scores a touchdown, which constitutes an out-of-position score. Yahoo! responds that the claimed "bonus points" are not present in its product because a kicker receives no more than the normal six points for scoring a touchdown, and the term "miscellaneous points" merely describes an asterisk that is placed next to those six points in order to explain the unusual circumstance of awarding six points to a kicker for scoring a touchdown.
 
 
 29
 We agree with Yahoo! that Fantasy has not raised any genuine issue of material fact that Yahoo!'s product infringes under the proper interpretation of the "bonus points" limitation. As explained by Yahoo!, the term "miscellaneous points" is used merely to indicate when an unusual play has taken place, and no additional points are awarded beyond those given for that play in an actual football game as a result of that label. The district court therefore properly granted summary judgment that Yahoo! does not infringe as a matter of law.
 
 2. ESPN
 
 30
 Fantasy argues that ESPN's product infringes the '603 patent because it awards bonus points to players who score out of position. Fantasy argues that in ESPN's game, for example, a quarterback receives four points for a passing touchdown and six points for a rushing or receiving touchdown, and thus quarterbacks receive bonus points depending upon the type of scoring play. ESPN responds that ESPN's game does not infringe as a matter of law because it awards the same number of points for a particular type of touchdown regardless of a player's position.
 
 
 31
 We agree with ESPN that its product does not infringe the '603 patent as a matter of law. ESPN's game does not award additional points beyond those given in an actual football game, as a player can receive no more than the standard six points for scoring a touchdown. Furthermore, although ESPN's fantasy football game awards a different number of points depending upon the type of scoring play, that game does not distinguish between the positions of the players who performed those plays. For example, although quarterbacks receive six points for a receiving touchdown, wide receivers and running backs also receive the same number of points for that type of scoring play. The district court therefore properly granted summary judgment of noninfringement because no reasonable juror could conclude that ESPN's game infringes as a matter of law.
 
 3. SportsLine
 
 32
 Fantasy concedes that SportsLine's Fantasy Football and Football Challenge games do not infringe the '603 patent under the district court's interpretation of the "bonus points" limitation. Fantasy argues, however, that the district court erred by granting summary judgment with respect to the Commissioner.com product even under the court's construction of that limitation. Fantasy contends that the district court erroneously analyzed that product under a contributory infringement framework, arguing that under Intel Corp. v. ITC, 946 F.2d 821, 20 USPQ2d 1161 (Fed.Cir.1991), the Commissioner.com product directly infringes because it is capable of being configured to award bonus points when a player scores out of position. In support of that argument, Fantasy cites the declaration of Shanen Elliott, one of Fantasy's Product Specialists, who stated that he "was able to customize the `Commissioner.com' football game to include essentially the same scoring system that is described in the ['603] patent," i.e., a system that awards bonus points for unusual plays such as out-of-position scoring. SportsLine responds that the Commissioner.com product does not directly infringe because it is not a computerized fantasy football game operated by SportsLine, but rather is a modifiable software tool that enables subscribers to operate their own fantasy football leagues on customized internet web pages. SportsLine also argues that Fantasy failed to prove any underlying direct infringement that could serve as the basis for a determination that it contributorily infringes the '603 patent.
 
 
 33
 We conclude that the district court erred in granting summary judgment with respect to the Commissioner.com product because genuine issues of material fact exist as to whether that product infringes under the proper infringement analysis. Although we disagree with Fantasy's characterization of Intel as requiring a finding of infringement when a device is capable of being altered in an infringing manner, we nevertheless agree with Fantasy that the Commissioner.com product must be analyzed under a direct infringement framework.
 
 
 34
 Intel involved a claim to a memory chip in an integrated circuit having, inter alia, "programmable selection means for selecting [an] alternate addressing mode." Id. at 831, 20 USPQ2d at 1170 (emphasis added). The defendant in Intel argued that even though its products could be modified to infringe that claim, the fact that those products were capable of infringing alone could not support a finding of infringement. Id. at 832, 20 USPQ2d at 1171. Although we concluded that the defendant's products did infringe, we explained our basis for doing so as follows: "Because the language of claim 1 refers to `programmable selection means' ... the accused device, to be infringing, need only be capable of operating in the page mode." Id. (emphases added). Intel therefore does not stand for the proposition, as argued by Fantasy, that infringement may be based upon a finding that an accused product is merely capable of being modified in a manner that infringes the claims of a patent. See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1555-56, 33 USPQ2d 2005, 2008-09 (Fed.Cir.1995) (distinguishing Intel and holding that the fact that the accused device could be altered in way that satisfies the claim term "rotatably coupled" did not per se justify a finding of infringement); see also Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330, 58 USPQ2d 1545, 1554 (Fed. Cir.2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement."). Rather, as in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred.
 
 
 35
 In the present case, claim 1 is directed to "[a] computer for playing football," and thus the claims of the '603 patent read on a computer executing fantasy football game software.[3] Claim 1 also sets forth a number of functionally defined means that that software must contain, including a "means for scoring ... bonus points" for unusual scoring plays. Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations. Thus, the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the functions defined by those options when they are selected by the user. Therefore, although a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are already present in the underlying software. Otherwise, the user would be required to alter the code to enable the computer to carry out those functions. Accordingly, in order to infringe the '603 patent, the code underlying an accused fantasy football game must be written in such a way as to enable a user of that software to utilize the function of awarding bonus points for unusual plays such as out-of-position scoring, without having to modify that code. In other words, an infringing software must include the "means for scoring ... bonus points" regardless whether that means is activated or utilized in any way.
 
 
 36
 SportsLine argues that the Commissioner.com product cannot directly infringe because it is not a "computer for playing football," as required by the claims. SportsLine contends that the district court properly found that the Commissioner.com product is a "modifiable software tool" that is "not a fantasy football game operated by SportsLine." Fantasy II at 11. We disagree. The record clearly demonstrates that the Commissioner.com product is software installed on a computer that enables a user to play fantasy football games over the Internet. Indeed, the web pages advertising the Commissioner.com product promote it as "a utility designed to run a head-to-head Fantasy Football League," and that "getting started is easy" in that a user may immediately begin playing fantasy football after performing a few simple steps. That material goes on to explain that "[a]fter you create your league website a simple Scoring Wizard will allow you to configure the many powerful options briefly described below." One of those options is the ability to have "position-specific scoring" by creating "different scoring configurations for each position." (Emphases added.) Consequently, a user need only utilize the Scoring Wizard program, as demonstrated by Mr. Elliott's declaration, to play a fantasy football game that provides for the awarding of bonus points for out-of-position scoring, and thus that means is necessarily present in the software that operates the Commissioner.com product. We therefore conclude that no reasonable juror could find that the Commissioner.com product is not software installed on a "computer for playing football" that may directly infringe the '603 patent.
 
 
 37
 We also reject SportsLine's argument that it cannot infringe the '603 patent because the Commissioner.com product is not a game operated and controlled by SportsLine, but rather is operated by the users of that product on their own computers. First, there is no "user participation" or "control" limitation in the claims of the '603 patent requiring that an accused fantasy football game be operated by any specific entity. The claims only require that the software utilized to play fantasy football provide the ability to award "bonus points," as that term has been construed. In any event, the web pages advertising the Commissioner.com product make clear that users "decide the scoring system, the schedule, the draft format, and all other league rules while still receiving all the benefits of having your league on-line." (Emphasis added.) Those pages also boast that the Commissioner.com product enables users to play fantasy football with "[n]o downloading of updates. No re-installing software. No losing the entire season's data because your computer crashed." The users of the Commissioner.com product therefore access the necessary software to play fantasy football at SportsLine's server on the Internet, and thus that software is maintained and controlled by SportsLine.
 
 
 38
 SportsLine's final argument, however, raises an issue that requires further factfinding. Specifically, SportsLine argues that kickers cannot be awarded points for out-of-position scoring (i.e., touchdowns, as distinct from field goals and PATs) in any fantasy football game created by the Commissioner.com product, and thus players in the "second group" cannot receive the "bonus points" required by the claims of the '603 patent. Peter Pezaris, Vice President of SportsLine, indicated in a declaration that the only way to vary the scoring for kickers is to award additional points based on the length of a field goal. Mr. Elliott, however, stated that he was able to configure the scoring system in the fantasy football league he created to award additional points to kickers for scoring a touchdown, but did not specifically describe how he was able to do so. It is unclear from the record on appeal whether the Commissioner.com product supports the awarding of "bonus points" to "kickers in a second group." That factual dispute therefore precludes us from concluding whether the Commissioner.com product infringes as a matter of law, and thus the district court must resolve that issue on remand.
 
 
 39
 We therefore vacate the district court's grant of summary judgment of noninfringement and remand the case for it to determine, using a direct infringement analysis, whether the software underlying that product supports the awarding of "bonus points" when kickers score touchdowns.
 
 
 40
 C. Yahoo!'s Motion for Attorney Fees and Costs and Motion to Strike
 
 
 41
 Yahoo! argues that Fantasy's actions both before and after it filed its complaint demonstrate that it failed to conduct a reasonable pre-filing investigation before commencing this suit. Fantasy responds that its February 4, 2000, letter demonstrates that it performed an adequate pre-filing investigation. Fantasy also argues that its proposed claim construction, under which all of the defendants literally infringe, was reasonable.
 
 
 42
 We conclude that the district court properly denied Yahoo!'s motion for attorney fees and costs. Yahoo! has failed to demonstrate that Fantasy's proposed construction of the "bonus points" limitation as including additional points for distance scoring and total yardage was unreasonable. Furthermore, Fantasy's February 4, 2000, letter demonstrates that it performed a reasonable investigation of Yahoo!'s fantasy football product before filing the complaint that initiated the current proceeding. The district court therefore did not clearly err in determining that Yahoo! failed to prove by clear and convincing evidence that this was an exceptional case, and further did not abuse its discretion in refusing to award attorney fees and costs.
 
 
 43
 Finally, because the January 15, 1999, letter that is the subject of Yahoo!'s motion to strike is not necessary to our decision regarding Yahoo!'s motion for attorney fees and costs, we deny that motion as moot.
 
 CONCLUSION
 
 44
 Because the district court correctly determined that Yahoo!'s and ESPN's products, as well as SportsLine's Fantasy Football and Football Challenge games, do not infringe the '603 patent as a matter of law, we affirm those portions of the court's decisions. We also affirm the court's denial of Yahoo!'s motion for attorney fees and costs and deny Yahoo!'s motion to strike as moot. We conclude, however, that the district court erred in determining that SportsLine's Commissioner.com product does not infringe as a matter of law and remand for further proceedings consistent with this opinion. Accordingly, we
 
 
 45
 AFFIRM-IN-PART, VACATE-IN-PART, and REMAND.
 
 
 
 Notes:
 
 
 [1]
 The games at issue on appeal include Yahoo! Sports Fantasy Football, ESPN Fantasy Football, and three SportsLine games: Fantasy Football, Football Challenge, and Commissioner.com
 
 
 [2]
 Although the examiner may have misdescribed certain positions in determining that the grouping of players was known in the art, we are satisfied that the examiner adequately understood the concept of grouping players according to position
 
 
 [3]
 Although the phrase "[a] computer for playing football based upon actual football games" appears only in the preamble, that phrase constitutes a limitation of the claims because it is "necessary to give life, meaning and vitality to the claims."Kropa v. Robie, 38 C.C.P.A. 858, 187 F.2d 150, 152, 88 USPQ 478, 481 (1951). The prosecution history demonstrates that the examiner treated all of the claims in Fantasy's application as containing the "computer" limitation in order to comply with the written description requirement of 35 U.S.C. § 112, and Fantasy acquiesced in that treatment. In any event, Fantasy does not contend on appeal that the claims of the '603 patent do not require the use of software to play the claimed fantasy football game.