**PHONOMETRICS, INC.,**
Plaintiff–Appellant,

v.

**NORTHERN TELECOM INC., and United Telephone Company of Florida,**
Defendants–Appellees,

and

**Sprint Corporation, Defendant–Appellee.**

No. 96–1469.

United States Court of Appeals, Federal Circuit.

Jan. 15, 1998.

Rehearing Denied Feb. 11, 1998.

raised in his opening brief.

John P. Sutton, Bryan Hinshaw Cohen & Barnet, San Francisco, California, argued for plaintiff-appellant. With him on the brief was Lance D. Reich.

Marvin S. Gittes, Cobrin Gittes & Samuel, New York, New York, argued for defendants-appellees Northern Telecom, Inc., et al. With him on the brief was David A. Jacobs.

Kevin J. Murray, Kenny Nachwalter Seymour Arnold Critchlow & Spector, Miami, Florida, argued for defendant-appellee Sprint

Corporation. With him on the brief was Harry R. Schafer.

Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

Phonometrics, Inc. appeals from a summary judgment and certain other final orders of the United States District Court for the Southern District of Florida in *Phonometrics, Inc. v. Northern Telecom Inc.*, No. 93–6561–CIV–RYSKAMP (S.D. Fla. June 28, 1996). The district judge granted summary judgment of noninfringement of Phonometrics's U.S. Patent No. 3,769,463 (the "'463 patent") in favor of Northern Telecom Inc. ("NTI") and United Telephone Company of Florida ("United"), dismissed as moot NTI's and United's counterclaims of patent invalidity and unenforceability, and granted Sprint Corporation's ("Sprint's") motion to dismiss for lack of personal jurisdiction. Phonometrics appeals all three orders. This appeal was submitted for/ our decision following extended oral argument on this and two companion cases on December 4, 1997.[1] Because the district judge's construction of the claims in the '463 patent was proper, his entry of summary judgment of noninfringement under the doctrine of equivalents was correct. Furthermore, his decision to dismiss the counterclaims as moot was within his discretion. Finally, because his interpretation of the Florida long-arm statute was correct, and because Sprint, a Kansas corporation, had no presence and took no action in Florida, his dismissal of Sprint as a defendant was appropriate. We therefore affirm.

### BACKGROUND

Phonometrics sued NTI and United on July 8, 1993, alleging that they infringed the '463 patent originally issued to Phillip Graham and Lawrence Reich on October 30, 1973.[2] Phonometrics filed an amended com-

---

1. On the same day, we heard oral argument in two other appeals taken by Phonometrics. This case, together with *Phonometrics, Inc. v. Siemens Information Systems, Inc.*, Appeal No. 96–1495, – 1496, and *Phonometrics, Inc. v. Tadiran Electronic Industries, Inc.*, Appeal No. 96–1549, are companion cases. Because we declined to consolidate them, a separate disposition will issue in each appeal. Nevertheless, we expect that our decision here will impact those other two ap-

peals, as well as the array of other infringement complaints asserting the '463 patent pending before a number of federal district courts.

2. Because the 17–year patent term expired on October 30, 1990, *see* 35 U.S.C. § 154 (1994), and civil actions alleging infringement must be filed within six years, *see* 35 U.S.C. § 286 (1994), the suit only covered allegedly infringing activi-

plaint in June 1994, in which it named Sprint as an additional defendant.

The '463 patent claimed a computer device designed for use, for example, in hotels, to track the length and cost of long distance telephone calls made from individual hotel rooms. The device enabled hotel operators to bill guests for their correct share of long distance use without making a separate inquiry for "time and charges" of each individual call from an AT & T operator. Specifically, claim 1 of the '463 patent, the only independent claim, recites the following:

An electronic solid state long-distance telephone call cost computer apparatus for computing and recording the cost of each long-distance telephone call initiated from a given calling telephone, actuated by the lifting and replacement of the calling telephone to operate switch means coupled to the calling telephone, and further actuated by a call-completion signal generated in the telephone system when a called party answers at a called telephone, the computer apparatus comprising:

call timing means for timing the duration of each completed call;

settable charge selector means for storing initial fixed charge data for a given predetermined initial call interval and incremental charge data for subsequent additional predetermined incremental call intervals;

*call cost register means, including a digital display, for providing a substantially instantaneous display of cumulative call cost in dollars and cents;*

and computer circuit means, coupled to said switch, to said timing means, to said charge selector means, and to said call cost register means, for automatically recording, in the call cost register means, the cost of each long-distance call made from the calling telephone, said computer circuit means comprising:

reset means for resetting said timing means and said call cost register means immediately upon occurrence of said call-completion signal;

*initial cost transfer means* initiating operation of said call timing means and

for applying the complete initial fixed charge data from said charge selector means to said call cost register means substantially instantaneously upon resetting of said call timing means and said call cost register;

*incremental cost transfer means* for applying the complete incremental charge data from said charge selector means to said call cost register means substantially instantaneously upon completion of timing out the initial call interval by said call timing means and for again applying the complete incremental charge data from said charge selector means to said call cost register means substantially instantaneously upon completion of timing out of each incremental call interval following said initial call interval;

and *termination means* for interrupting operation of said computer apparatus, with the cumulative call cost held in and displayed by said call cost register means, upon operation of said switch by replacement of the calling telephone.

Col. 8, II. 24–68, col. 9, II. 1–8 (emphasis added). Phonometrics has neither manufactured any products nor granted any licenses under the '463 patent, its sole asset. It has, however, brought dozens of infringement actions, many of which were stayed before the Southern District of Florida pending disposition of this appeal.

NTI, a Delaware corporation, manufactures and sells telephone switching equipment, including Private Branch Exchanges ("PBXs") and Key Service Units ("KSUs"), across the country and in Florida, where it sells to customers directly and through United. A PBX is a high speed telecommunications switching system designed to interconnect a large number of individual telephone lines to each other and to the public telephone network through a central location. A KSU is similar to a PBX but is smaller in size and scale. United is a Florida corporation providing telephone service and selling telephone equipment, including equipment

ties that occurred between July 8, 1987, and October 30, 1990.

manufactured by NTI, in the state of Florida.

Phonometrics alleged that NTI's PBXs and KSUs manufactured and sold during the relevant period infringed the '463 patent under the doctrine of equivalents.[3] NTI and United responded by filing a counterclaim, alleging that the '463 patent was invalid and unenforceable. NTI and United then filed a motion for summary judgment of noninfringement and an alternative motion for summary judgment of patent invalidity for failure to disclose the best mode. The district court concluded that no genuine dispute of material fact existed, and therefore that a decision on the motion for summary judgment of noninfringement was proper. After construing claim 1 of the '463 patent, the judge concluded that the accused devices manufactured by NTI and sold by NTI and United did not infringe the '463 patent because none of the accused devices contained call timing means, settable charge selector means, call cost register means, reset means, or initial cost transfer means as specifically required by claim 1 of the '463 patent or their functional equivalents. The district judge therefore granted the motion for summary judgment in favor of NTI and United, and dismissed their counterclaims as moot.[4]

Meanwhile, in response to the amended complaint filed by Phonometrics naming Sprint[5] as an additional defendant based on the allegation that United is a Sprint subsidiary, Sprint filed a motion to dismiss for lack of personal jurisdiction under Florida's long-arm statute. The district court, construing Florida law, concluded that Phonometrics had failed to present a prima facie case to show that the court had jurisdiction over Sprint. Specifically, the court held that Sprint established that it does not control United and that it had no offices, employees, or agents in Florida itself, and neither manufactures nor sells equipment in Florida, nor

otherwise conducts business there, and Phonometrics could provide no evidence to refute these facts. The district court therefore dismissed the claim against Sprint on March 29, 1996, for lack of personal jurisdiction.

## ANALYSIS

### I.

Summary judgment is properly granted in cases where there is no genuine issue of material fact, and the party requesting summary judgment can show it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). In considering whether the district court's decision to grant summary judgment was proper, we must determine for ourselves whether any genuine dispute of material fact exists. *See Vas–Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991) (citing *C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*, 911 F.2d 670, 673, 15 USPQ2d 1540, 1542–43 (Fed.Cir.1990)).

Phonometrics contends that evidence demonstrating genuine disputes of material fact was presented to the district judge but ignored. Although an infringement analysis usually involves both issues of law and questions of fact, summary judgment of noninfringement may still be proper. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646, 33 USPQ2d 1038, 1039 (Fed.Cir. 1994); *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571, 230 USPQ 385, 389 (Fed.Cir.1986). A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *See Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546, 31 USPQ2d 1666, 1670 (Fed.Cir.1994).

---

3. Phonometrics has conceded that NTI's equipment does not literally infringe the '463 patent.

4. The motion for summary judgment of invalidity for failure to disclose the best mode also was dismissed as moot by the district court.

5. At oral argument, there was substantial confusion as to the corporate entities potentially involved in this suit. It appears that Sprint Cor-

poration, a Kansas corporation, is a holding company which merely owns stock in a number of subsidiaries. Only this entity has been served and named in this proceeding. We believe that "U.S. Sprint" is a trade name. Sprint Communications Company L.P. appears to be an independent subsidiary operating in the state of Florida. In any event, it was neither named in the suit nor served with the complaint.

Although Phonometrics's disagreement with the district judge's construction of the '463 patent may raise a question of patent law, properly appealable here, it does not create a genuine dispute of material fact that would require us to reverse the district court's grant of summary judgment as improper under Rule 56(c). Disputes concerning the meaning of claims do not preclude summary judgment, because the resolution of those disputes is part of the process of claim interpretation, a question of law.

With respect to Phonometrics's argument that there were factual disputes about the nature and operation of the accused devices, the facts presented by NTI and United through affidavits were uncontested before the district court. As the district court observed, Phonometrics failed to controvert through its own affidavits any of the descriptions set forth by NTI and United regarding the structure and operation of the accused devices.

Because we agree with the district judge that no material facts were in genuine dispute preventing summary judgment under Rule 56(c), we now consider whether the district judge's construction of claim 1 was correct. If it was, then summary judgment of noninfringement was proper because Phonometrics does not dispute the structure and operation of the accused devices and that these devices cannot infringe the '463 patent equivalently under the district court's construction of claim 1.

## II.

### A. The Collateral Estoppel Effect of *Intellicall*

We must first consider whether, as NTI and United suggest, we are bound by *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 21 USPQ2d 1383 (Fed.Cir.1992), in which this court also construed claim 1 of the '463 patent. The issue in *Intellicall* was whether the limitation "digital display" meant only visual display or also encompassed machine readable information. *See id.* at 1387–88, 952 F.2d 1384, 21 USPQ2d at 1386–87. The district court held, and we agreed, that the limitation "digital display" does not include machine readable devices, or information given to a computer for later access. *Id.* at 1388, 952 F.2d 1384, 21 USPQ2d at 1387. Any construction of other limitations in claim 1, including any construction of those limitations at issue here, that we or the district court made in *Intellicall* was merely dictum, and therefore has no issue preclusive effect for this appeal.

### B. Construction of Claim 1 of the '463 Patent

Claim construction is a question of law, and therefore we review the district court's claim interpretation *de novo*. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed. Cir.1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). Proper construction requires an examination of claim language, the written description, and, if introduced, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). The appropriate starting point, however, is always with the language of the asserted claim itself. *See id.; Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620, 34 USPQ2d 1816, 1819 (Fed.Cir.1995).

#### 1. The Language of Claim 1.

The crucial clause of claim 1 requires a "call cost register means, including a digital display, for providing a substantially instantaneous display of cumulative call cost in dollars and cents." Because we can dispose of this appeal by construing only the "call cost register means," we need not and do not construe other, unrelated clauses except to the extent they can help us establish the requirements attributed to a call cost register means by the '463 patent. We therefore focus our attention on reviewing the construction of this clause, and this clause only.

According to claim 1, the call cost register means provides "a substantially instantaneous display of cumulative call cost in dollars and cents." Thus, it appears that a call cost register means functions to display current, accurate information about the cost of a call. It is not immediately clear, however, what the limitation "substantially instantaneously" requires. NTI and United suggest that it

requires displayed information about the cost of the call at the same instant that charges accrue. Phonometrics argues, however, that it simply requires the display of accurate cost information immediately upon termination of the call. Fortunately, we need not rely solely on the words used in this means clause to determine the requirements of this limitation, for there are other clauses in claim 1 that inform our construction of the call cost register means and further define the functions attributed to it by the patentee. Specifically, the final three clauses of claim 1 provide such information.

The first of these three clauses requires an *"initial cost transfer* means ... for applying the *complete initial fixed charge data* from said charge selector means to said call cost register means substantially instantaneously upon resetting of said call timing means and said call cost register"* (emphasis added). Thus, when the device is reset, the "initial fixed charge data" is transferred "substantially instantaneously" from the charge selector means to the call cost register means and displayed there via the digital display.

Claim 1 further requires (emphasis added) an *incremental cost transfer* means for applying the *complete incremental charge data* from said charge selector means to said call cost register means substantially instantaneously *upon completion of timing out the initial call interval* ... and for again applying the complete incremental charge data from said charge selector means to said call cost register means substantially instantaneously *upon completion of timing out of each incremental call interval* following said initial call interval. According to this clause, if the call is still in progress when the initial call interval has expired, the "incremental charge data" is transferred to the call cost register means and displayed there "substantially instantaneously." Additional incremental charges are transferred to the call cost register means "substantially instantaneously" upon the passage of additional call intervals. This process of transferring successive interval costs continues throughout the duration of the call.

■ The limitations in these clauses are revealing. The repeated use of the limitation "substantially instantaneously" to convey the immediacy by which the call interval cost information is transferred to the call cost register means supports our interpretation that the register displays cumulated costs as they accrue, in real time, and not only once the call has ended. A word or phrase used consistently throughout a claim should be interpreted consistently. Thus, as each cost increment is accrued, it is transferred to and displayed "substantially instantaneously" by the call cost register means. The phrase "substantially instantaneously" clarifies that the display in the register is current throughout the duration of the call; the call cost register does not merely display the cost after the call has ended.

Furthermore, the final clause addresses what occurs upon call termination; the claimed device includes a "termination means for interrupting operation of said computer apparatus, with the cumulative call cost held in and displayed by said call cost register means, upon operation of said switch by replacement of the calling telephone." It is especially significant that, at the point at which the call is terminated, the apparatus does not perform a calculation to determine the total cost of the call. Thus, the cost displayed in the register must be accurate at all times *during* the call, so that regardless of the point at which the call is terminated, the cumulative cost displayed in the register will be accurate without further calculation. Phonometrics's description of its claimed device as a "calculator" is therefore misleading; rather, the claimed device is simply a continuous counting device, for no provision is made for any calculation upon completion of a call.

When the claim itself is considered in its entirety, it becomes clear that the call cost register means has two separate and equally important functions: (1) it provides the caller with real time, accurate information about the cost of the call via digital display as the long distance charges accrue *during* the call; and (2) it reflects the total cost of the call via the same digital display *after* the call has been terminated. Phonometrics argues that only the second function is claimed, or that only this second function is important for determining infringement. We disagree.

Both functions are claimed explicitly in the '463 patent, and both are significant for construction.

### 2. The Written Description.

■ The language used throughout the specification preceding the claims supports this construction of dual functions of the call cost register means. For example, the written description explains that the call cost register means operates so that "[t]he cumulative cost of a single call is displayed in the single call cost register ... to *continuously remind the caller as to the cost of the call as the call progresses* and to indicate the total cost of the call at the completion." Col. 3, II. 27–31 (emphasis added). This description of the operation of the call cost register means in a preferred embodiment supports our construction of the claim language: the call cost register means clearly provides information about the cost of the call while the call progresses. Although claims are not necessarily restricted in scope to what is shown in a preferred embodiment, neither are the specifics of the preferred embodiment irrelevant to the correct meaning of claim limitations. *See Markman*, 52 F.3d at 979, 34 USPQ2d at 1329. Phonometrics of course argues that additional limitations cannot be imported into a claim from the written description. We may, however, construe a specifically claimed limitation in light of the specification, which is all we do here.

Similarly, the written description carefully explains the importance of the initial and incremental cost transfer means for the real time operation of the device:

> When the party called is reached, the 90–volt pulse derived from the telephone line upon the lifting of the receiver of the called party substantially simultaneously clears the elapsed time indicator and starts the indicator counting time. Further, substantially instantaneously *the single call cost register is cleared and loaded with the 3–minute charge* indicated on the set charge selector.... Should the call exceed three minutes, *the elapsed time indicator causes the per-minute overtime charge to be added to [the] cost register[ ], and this is repeated at further 1–minute intervals* during the call. At the conclusion of the call, all counting stops and the

displays in the cost register[ ] and elapsed time indicator are retained.

Col. 3, II. 3–19 (emphasis added, internal figure references omitted). Thus, the specification further clarifies the way in which the claimed device operates, adding each incremental charge to the call cost register means as each interval elapses, to provide real time long distance charge information while the long distance call is in progress.

Phonometrics, however, objects to the district court's construction of the call cost register means—that it displays the mounting cost of a call in progress—observing that the phrase "in progress" appears nowhere within the language of claim 1. While Phonometrics is correct that this phrase does not appear in the claim itself, that fact does not render erroneous the construction given the claim by the district court. In fact, when the claim is considered properly as a whole, we think it clear that the '463 patent is limited to a device which displays the cumulative cost of a long distance call both as charges accrue during the call and after the call has been terminated.

### 3. The Prosecution History.

Finally, the prosecution history supports our understanding that the call cost register means performs two distinct functions by displaying cumulated costs both during the call and upon its termination. During prosecution of the '463 patent, the applicants specifically emphasized the functions of the cost transfer means in distinguishing over the prior art:

> In addition, and as clearly[ set forth in Claim 10 [now claim 1 of the '463 patent], the apparatus of the present invention instantaneously transfers the three minute charge information to the cost register when the call is completed by the receiving party lifting the called telephone, and the *incremental one minute charges are applied to the cost registers substantially instantaneously upon the timing out of each one minute interval.* In the Fletcher device, and other similar prior art apparatus, the call charge information requires considerable time for entry and may well result in an erroneous charge recording if

the calling telephone is hung up after only a minor increment of a charge interval is completed. This operational error is entirely obviated by the cost computer apparatus of the present invention. Accordingly, it is submitted that Claim 10 affords distinctive and patentable differences, in comparison with the prior art of record, and should be allowed.

Amendments to Application No. 229,711, April 4, 1973, p. 12 (emphasis added). Thus, the in-progress transfer of accrued costs to the call cost register means increased the inherent accuracy of the device compared to the prior art Fletcher device. By the applicants' own statement, the in-progress and instantaneous transfer of incremental costs was an important function for patentability. The function is clearly set forth by the claim language as viewed in light of the written description and the prosecution history, and cannot be ignored by us here.

Our independent review of the claim language thus reveals that the district judge's construction of claim 1 of the '463 patent with respect to the functions of the call cost register means was supported by the language of the claim itself, the rest of the specification, and the prosecution history. We hold that claim 1 of the '463 patent requires a call cost register means which functions both to provide accurate cost information while the call progresses as well as total cost information once the call has ended.

## C. Comparison of the Accused Devices to the Construed Claim

■ Although Phonometrics alleged infringement by a wide variety of NTI's products, the district judge concluded that only NTI's NORSTAR, VANTAGE 48, and 1/SL-1 (which Phonometrics refers to as MERIDIAN) should be considered in the infringement analysis because only those devices provided call cost features at all. Thus, we limit our review of the district court's infringement analysis to these three devices, and ask ourselves whether any of them substantially perform the in-progress cost display function attributed to the call cost register means. Clearly, they do not.

Although all three devices provide cost information at the end of a call, none of them can provide cost information while the call is in progress. Phonometrics in fact concedes as much. Thus, we conclude there can be no equivalent infringement, for one of the functions claimed in the '463 patent is completely absent from the accused devices. See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co., —— U.S. ——, —— – ——, ——, 117 S.Ct. 1040, 1048–49, 1054, 137 L.Ed.2d 146 (1997); Pennwalt Corp. v. Durand–Wayland, Inc., 833 F.2d 931, 935, 4 USPQ2d 1737, 1740 (Fed.Cir.1987) (in banc).

It is clear, therefore, that as a matter of law the accused products cannot infringe the '463 patent. The grant of summary judgment of noninfringement by the district judge was correct, and we therefore uphold it.

### III.

We can dispose of Phonometrics's four remaining arguments on appeal quite directly.

First, Phonometrics filed a motion for reconsideration under Rule 60(b), alleging that NTI and United made several misrepresentations of fact on which the court had relied in granting summary judgment. According to the rule, "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for ... misrepresentation...." Fed. R.Civ.P. 60(b). The district judge referred the motion to a special master, and adopted the master's report and recommendation that no misrepresentation of fact had been made.

■ On appeal, Phonometrics challenges both the resolution of its Rule 60(b) motion and its referral to a special master. We note first that a decision on a Rule 60(b) motion, when the motion does not toll the time for filing an appeal from the final judgment, is a separate final action by the district court and, as such, must be appealed separately from the underlying action. See Stone v. INS, 514 U.S. 386, 401–03, 115 S.Ct. 1537, 1547–48, 131 L.Ed.2d 465 (1995). Because Phonometrics failed to file a separate notice of appeal regarding the disposition of its Rule 60 motion, we may not consider it in this appeal from the underlying case. Furthermore, we note that Phonometrics failed to object to the referral at the time it was made, and therefore has waived any objec-

tion to use of the special master it may raise before us. *See Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1566, 7 USPQ2d 1057, 1060 (Fed.Cir.1988) ("A party cannot wait to see whether he likes a master's findings before challenging the use of the master. Failure to object in a timely fashion constitutes a waiver.").

■ Second, Phonometrics appeals from the district court's dismissal as moot of the counterclaim of invalidity and unenforceability in light of its grant of summary judgment of noninfringement. We have previously held that a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement. *See Nestier Corp. v. Menasha Corp.-Lewisystems Div.,* 739 F.2d 1576, 1580–81, 222 USPQ 747, 751 (Fed.Cir.1984) ("[T]here was no reversible error or abuse of discretion ... in the District Court's withholding of judgment on the issues related to the ... patent's validity—despite the jury's having found the patent not invalid—in light of the jury's finding of noninfringement."); *see also Leesona Corp. v. United States,* 208 Ct.Cl. 871, 530 F.2d 896, 906 n. 9, 185 USPQ 156, 163 n. 9 (adopted as opinion of Court of Claims at 208 Ct.Cl. 871, 530 F.2d 896, 192 USPQ 672 (1976)) ("While the better practice is to treat both the validity and infringement issues ... it is not always necessary to do so. Where, as here, noninfringement is clear and invalidity is not plainly evident it is appropriate to treat only the infringement issue." (citations omitted)). The Supreme Court's decision in *Cardinal Chemical Co. v. Morton International,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993), does not preclude this discretionary action by the district court. *Cardinal Chemical* simply prohibits us, as an intermediate appellate court, from vacating a judgment of invalidity when we conclude that a patent has not been infringed, and therefore has no bearing on the district court's actions in this case. Moreover, Phonometrics was not aggrieved by the dismissal of its opponents' motion, and therefore has no statutory right to appeal that decision here, despite its argument that it has a general interest in a judicial determination of its patent's validity.

■ Third, Phonometrics challenges the injunctive order issued by the district court that precludes Phonometrics from filing additional lawsuits alleging infringement of the '463 patent by other sellers or users of NTI's NORSTAR, VANTAGE 48, and 1/SL–1 devices. We conclude that the injunction meets the requirements of Rule 65 and that the decision by the district judge to enjoin such further suits did not constitute an abuse of discretion.

■ Fourth, Phonometrics appeals from the district court's decision to dismiss Sprint as a defendant for lack of personal jurisdiction. We note that the jurisdictional issue is prudentially moot based on our affirming the judgment of noninfringement, *ante,* for if United is not liable for direct infringement, then its parent company, Sprint, cannot be liable either. We agree with the district judge, however, that Phonometrics failed to make a prima facie showing of personal jurisdiction as required by Florida law as interpreted by the Florida courts. *See, e.g., Qualley v. International Air Serv.,* 595 So.2d 194 (Fla.Dist.Ct.App.), *cause dismissed,* 605 So.2d 1265 (Fla.1992). Sprint itself demonstrated that it had no presence or activity in Florida, nor did it control United's corporate activities. Therefore, we uphold the district court's decision to dismiss Sprint as a co-defendant.

## CONCLUSION

The district court's construction of the '463 patent was correct and therefore, as a matter of law, the accused devices do not infringe the patent under the doctrine of equivalents. Accordingly, the decision granting summary judgment of noninfringement was proper. Furthermore, the district court's decision to dismiss as moot the counterclaim of patent invalidity was within the court's discretion, and the dismissal of Sprint as a defendant for lack of personal jurisdiction was a correct application of Florida law. We therefore affirm these orders of the district court as well.

*AFFIRMED.*