**PHONOMETRICS, INC., Plaintiff,**

**and**

**John P. Sutton, Liable Party–Appellant,**

**v.**

**ECONOMY INNS OF AMERICA, Clubhouse Inns of America, Amfac Resorts, Wyndham Hotel Co., Meditrust Corp. (formerly known as La Quinta Inns), Marriott International, Inc., and Host Marriott Corporation, Defendants,**

**and**

**Interstate Hotels, LLC, and Park Lane Hotels International, and Cendant Corporation (formerly known as Hospitality Franchise Systems), and Four**

Seasons Hotels Limited, and Grosvenor Hotel and Fairmont Hotel Management, and Rhi Hotels, Inc., Defendants–Appellees.

Nos. 02–1502, 02–1503, 02–1504, 02–1505.

United States Court of Appeals,
Federal Circuit.

Nov. 21, 2003.

See also 319 F.3d 1328.

John P. Sutton, of San Francisco, CA, pro se.

William E. Davis, Buchanan Ingersoll, of Miami, FL, argued for defendants-appellees. Of counsel was Lawrence B. Lambert.

Gary L. Benton, Coudert Brothers LLP, of San Francisco, CA, for defendant-appellee RHI Hotels. Of counsel was Kristin A. Ring.

Nathan Lane III, Squire, Sanders & Dempsey L.L.P., of San Francisco, CA, for defendant-appellee Interstate Hotels, LLC.

Stephen D. Kaus, Cooper, White & Cooper LLP, of San Francisco, CA, for defendant-appellee Park Lane Hotels International.

Stanley Young, Heller Ehrman White & McAuliffe LLP, of Menlo Park, CA, for defendant-appellee Four Seasons Hotels Limited.

Jonathan R. Bass, Coblentz, Patch, of San Francisco, CA, for defendants-appellees Fairmont Hotel Management and Grosvenor Hotels Group. Of counsel were Howard A. Slavitt, and Jeffrey G. Knowles.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

MICHEL, Circuit Judge.

John P. Sutton, as Liable Party–Appellant, appeals from the order of the United States District Court for the Southern District of Florida granting-in-part and denying-in-part the joint motion of eighteen defendants for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

*Phonometrics, Inc. v. Marriott Int'l, Inc.,* Nos. 94–6533–, 94–6689–, 94–6691–, 94–7106–, 94–7127–, and 97–8126–CIV–RYSKAMP (S.D.Fla. Apr. 12, 2002) (*"Apr. 12 Order"*). Because the district court did not abuse its discretion in deciding to grant the motion as to certain of the defendants and to award them attorney fees associated with bringing the motion for sanctions, we affirm.

## BACKGROUND

The defendants in the actions giving rise to the present appeals are hotel companies sued in 1994 and 1997 by Phonometrics, Inc. In each of the underlying actions, Phonometrics alleges infringement of U.S. Patent No. 3,769,463 ("the '463 patent"), issued on October 30, 1973 to Philip G. Graham and Lawrence Reich. The '463 patent relates to an "Electronic Long Distance Telephone Call Computer and Recorder." Phonometrics contends that the defendants' use of internal telephone equipment to calculate, display, and record the cost of long distance telephone calls originating in their hotels infringes the '463 patent.

Before it brought its actions against the hotel defendants, Phonometrics had charged various manufacturers and sellers of telephone equipment with infringement of the '463 patent, including Intellicall, Inc. and Northern Telecom, Inc. *See, e.g., Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384 (Fed.Cir.1992); *Phonometrics, Inc. v. Northern Telecom, Inc.,* 133 F.3d 1459 (Fed.Cir.1998). The claim limitation at issue in *Intellicall, Northern Telecom,* and in many, if not all, of the hotel cases is the "call cost register means, including a digital display, for providing a substantially instantaneous display of cumulative call cost in dollars and cents."[1] In *Intellicall,*

---

[1] Claim 1 of the '463 patent, the only independent claim, reads as follows:

An electronic solid state long-distance telephone call cost computer apparatus for computing and recording the cost of each long-

we affirmed a grant of summary judgment of noninfringement of the '463 patent, holding that the term "digital display" does not include machine-readable devices. *Intellicall*, 952 F.2d at 1388. Then, in *Northern Telecom*, we affirmed a summary judgment of noninfringement based on a construction of the "substantially instantaneous" limitation as requiring that the call cost register means provide the caller with "accurate cost information while the call progresses as well as total cost information once the call has ended." *Northern Telecom*, 133 F.3d at 1467.

Shortly after we issued our opinion in *Northern Telecom*, we affirmed a grant of summary judgment of noninfringement to a telephone switching system manufacturer, in part on the ground that the manufacturer "introduced evidence that the accused peripheral systems did not and could not provide cost information about calls while the calls were in progress." *Phonometrics, Inc. v. Siemens Info. Sys., Inc.*, 135 F.3d 777, 1998 WL 30488, at *3 (Fed. Cir.1998) (Table). We similarly affirmed a grant of summary judgment of noninfringement to a switching equipment seller because the equipment was "unable to calculate call cost until after the call ends." *Phonometrics, Inc. v. Tadiran Elec. Indus., Inc.*, 135 F.3d 777, 1998 WL 33855, at *1 (Fed.Cir.1998) (Table). To this extent, we based both decisions on the claim construction stated in *Northern Telecom*. *Siemens*, 1998 WL 30488, at *2; *Tadiran*, 1998 WL 33855, at *1.

We had our first opportunity to review a decision on the merits of a Phonometrics infringement claim against a hotel defendant in *Phonometrics, Inc. v. Choice Hotels International, Inc.*, 21 Fed.Appx. 910 (Fed.Cir.2001). There, we affirmed the district court's grant of summary judg-

distance telephone call initiated from a given calling telephone, actuated by the lifting and replacement of the calling telephone to operate switch means coupled to the calling telephone, and further actuated by a call-completion signal generated in the telephone system when a called party answers at a called telephone, the computer apparatus comprising:

call timing means for timing the duration of each completed call;

settable charge selector means for storing initial fixed charge data for a given predetermined initial call interval and incremental charge data for subsequent additional predetermined incremental call intervals;

*call cost register means, including a digital display, for providing a substantially instantaneous display of cumulative call cost in dollars and cents;* and

computer circuit means, coupled to said switch, to said timing means, to said charge selector means, and to said call cost register means, for automatically recording, in the call cost register means, the cost of each long-distance call made from the calling telephone, said computer circuit means comprising:

reset means for resetting said timing means and said call cost register means immediately upon occurrence of said call-completion signal;

initial cost transfer means initiating operation of said call timing means and for applying the complete initial fixed charge data from said charge selector means to said call cost register means substantially instantaneously upon resetting of said call timing means and said call cost register; patent, col. 8, II. 24–68 to col. 9, II. 1–8 (emphasis added).

incremental cost transfer means for applying the complete incremental charge data from said charge selector means to said call cost register means substantially instantaneously upon completion of timing out the initial call interval by said call timing means and for again applying the complete incremental charge data from said charge selector means to said call cost register means substantially instantaneously upon completion of timing out of each incremental call interval following said initial call interval;

and termination means for interrupting operation of said computer apparatus, with the cumulative call cost held in and displayed by said call cost register means, upon operation of said switch by replacement of the calling telephone.

'463

ment of noninfringement based on the claim construction stated in *Northern Telecom* and the fact that "no evidence showed that Choice Hotels' accused device ... provided cost information *during* a call...." *Choice Hotels,* 21 Fed.Appx. at 911 (emphasis in original). Rejecting as "baffling" Phonometrics' contention that our earlier construction of the "substantially instantaneous" limitation was "pure dictum[,]" we noted that "[u]nder principles of stare decisis, ... future panels like the present panel will follow the claim construction set forth by our court in" *Intellicall* and *Northern Telecom,* and specifically cautioned Phonometrics against further litigation of that issue in this court. *Id.* at 911–12 ("[W]e would not welcome further appeals seeking to re-litigate the meaning of that phrase. Indeed, further appeal on that issue would appear to be subject to possible sanctions as frivolously filed under Fed. R.App. P. 38.").[2] Mr. Sutton, counsel for Phonometrics in the present action, also represented Phonometrics in each of *Northern Telecom, Siemens, Tadiran,* and *Choice Hotels.*

The present actions were instituted in 1994 and 1997, i.e., after we decided *Intellicall* but before our review of Phonometrics' appeal in *Northern Telecom.* The district court twice stayed the present actions, pending our decisions in *Northern Telecom* and *Choice Hotels,* respectively. After our opinion in *Choice Hotels* issued, Phonometrics, responding to the court's request, told the district court it would continue to pursue these cases. Shortly

thereafter, fourteen of the defendants served Phonometrics with a "safe-harbor" letter demanding dismissal of Phonometrics' infringement actions and a copy of their joint (unfiled) motion for Rule 11 sanctions. In response, Mr. Sutton, as counsel for Phonometrics, refused to dismiss the actions, stating that our decision in *Choice Hotels* was "mistaken." After observing the 21–day waiting period required by Rule 11(c)(1)(A), the defendants who made the Rule 11 demand, joined by four other hotel defendants, filed their joint motion for Rule 11 sanctions in the form of dismissal of Phonometrics' claims and attorney fees and costs associated with bringing the Rule 11 motion. Phonometrics filed oppositions to the sanctions motion and the defendants' subsequent motions for summary judgment of noninfringement.

The district court granted the Rule 11 motion of fourteen of the eighteen joining defendants, denying it as to those who were not parties to the safe-harbor letter and draft motion served on Phonometrics. After tracing the above-described history of the Phonometrics cases and noting that a litigant's Rule 11 obligations include a duty to refrain from continuing to advocate a position once it becomes untenable, the court held that Phonometrics' continued pursuit of its claims after our opinion issued in *Northern Telecom* violated that duty. It denied the defendants' request for dismissal as moot in light of its grants of summary judgment in their favor, but imposed liability for the defendants' attor-

---

**2.** Although not legally relevant to the issue here, we note that Phonometrics' earlier appeal to this court of the grant of summary judgment of noninfringement in Westin's favor in the face of this warning resulted in our own imposition of sanctions against Phonometrics and its counsel. *See Phonometrics, Inc. v. Westin Hotel Co.,* 319 F.3d 1328, 1333–34 (Fed.Cir.2003) ("True to our warning and pursuant to Federal Rule of Appellate Proce-

dure 38, we therefore sanction Phonometrics and order payment of $3000.00 to Westin Hotels, who has had to respond to arguments that defy any reasonable reading of the relevant cases. Because we know not where the blame for Phonometrics' litigation tactics lies, we direct the sanction to Phonometrics and its attorney, Mr. Sutton, jointly and severally.").

ney fees and costs associated with bringing the sanctions motion on Mr. Sutton. Bills were then submitted, and the court subsequently awarded the defendants attorney fees totaling $13,565.63. *Phonometrics, Inc. v. Marriott Int'l, Inc.*, Nos. 94–6533–, 94–6689–, 94–6691–, 94–7106–, 94–7127–, and 97–8126–CIV–RYSKAMP (S.D. Fla. June 10, 2002) (*"June 10 Order"*).

Mr. Sutton timely appealed from the district court's orders imposing liability for and awarding Rule 11 sanctions in the form of attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, an attorney who

> present[s] to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Fed.R.Civ.P. 11(b)(2)-(3). A court may impose sanctions on an attorney for a violation of these requirements. Fed.R.Civ.P. 11(c).

█ A district court's award of sanctions under Rule 11 is reviewed for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "The abuse of discretion standard applies to both the decision to sanction, and the amount of the sanction." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 984 (Fed.Cir.2000). We apply regional circuit law when reviewing the imposition of Rule 11 sanctions. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir.2002). In this case, Eleventh Circuit law applies.

### I.

### A.

Mr. Sutton challenges the imposition of sanctions on the ground that no "pleading, written motion, or other paper" was presented that failed to comply with the requirements of Rule 11(b). Similarly, he argues that "statements in oral argument cannot be the basis for sanctions," referring to the district court's discussion of Mr. Sutton's statement during a February 1997 hearing that "none of these equipments that these defendants have ... has a display to the caller during the call in progress." Mr. Sutton's contentions are unavailing for several reasons.

█ First, Rule 11 expressly provides that an attorney's certifications that he has made "an inquiry reasonable under the circumstances," that his legal contentions are warranted by law (or a nonfrivolous argument for a change in the law), and that his factual allegations have (or are likely to have) evidentiary support attach to every "presenting" of a "pleading, written motion, or other paper," "whether by signing, filing, submitting, *or later advocating*" such papers. Fed.R.Civ.P. 11(b) (emphasis added). Thus oral statements that "later advocat[e]" untenable contentions made in previously-filed papers are sanctionable under Rule 11. *See* Fed. R.Civ.P. 11 advisory committee's note ("[A] litigant's obligations with respect to the contents of ... papers are not measured solely as of the time they are filed

with or submitted to the court, but include reaffirming to the court and advocating positions contained in those [papers] after learning that they cease to have any merit."); *Battles v. City of Ft. Myers,* 127 F.3d 1298, 1300 (11th Cir.1997) (noting that the "1993 amendment to Rule 11 emphasizes an attorney's continuing obligations to make inquiries, and thus the rule allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable'" (quoting Fed.R.Civ.P. 11 advisory committee's note)).

In any event, the district court specifically declined to base its imposition of sanctions on any statements made during the February 1997 hearing. The district court noted that "[Phonometrics] argued in that hearing that . . . a display of the cost of the call to the caller during the call was not required for infringement of the '463 patent." However, according to the court, "[a]t that [pre-*Northern Telecom* ] point in the litigation, [Phonometrics'] argument was not completely baseless because there was no precedent from the Federal Circuit requiring such display to the caller to find infringement of the '463 patent." *Apr. 12 Order,* slip op. at 5–6 (citing the subsequent clarification (in 1998) in *Northern Telecom* that the claim construction approved in *Intellicall* related only to the "digital [human readable] display"). Thus the district court expressly considered and rejected the notion of sanctions based on the February 1997 oral statement.

■ Instead, the court relied on Phonometrics' continued pursuit of its infringement claims *after Northern Telecom* issued. In particular, the court stated:

From the moment the Federal Circuit issued its opinion in *Northern Telecom,* . . . [Phonometrics] was on notice that the Federal Circuit's interpretation of the '463 patent requires a real-time visual display *to the caller* which tracks the cost of a long distance call *while the call*

*is in progress.* When [Phonometrics] continued to pursue his claim after *Northern Telecom,* [Mr. Sutton] was advocating legal theories which he knew were no longer tenable. Such continued pursuit of frivolous claims is precisely what Rule 11 is meant to deter.

*Id.* (emphasis added). When Mr. Sutton's conduct is examined in the context of the history of the Phonometrics cases and the procedural record of the present actions, we think it clear that no abuse of discretion occurred.

As noted above, the present actions were stayed pending the resolution in *Northern Telecom,* and then again pending the resolution in *Choice Hotels.* Thereafter, once. Phonometrics indicated that it would continue to pursue its claims in these actions, the fourteen defendants awarded attorney fees pursuant to Rule 11 served Phonometrics with a dismissal demand and copy of the Rule 11 motion they later filed with the court. At this point, the issue of the viability of Phonometrics' claims was placed in sharp relief for Phonometrics and its counsel. Nevertheless, it persisted in its position; specifically—at that juncture—by filing with the court its opposition to the Rule 11 motion. Subsequently, at least as to some of the defendants awarded fees, Phonometrics filed yet another paper advocating its infringement contentions—its opposition to the defendants' joint motion for summary judgment. Thus the district court did not impose sanctions for the mere failure to withdraw non-meritorious claims. *See* Fed.R.Civ.P. 11 advisory committee's note ("[Rule 11(b)] does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses."). In contrast, the district court granted Rule 11 sanctions only after (1) *Northern Telecom* was decided (1998), (2) *Choice Hotels* was decided (2001), (3) Phonometrics refused to withdraw its

claims in the face of the Rule 11 safe-harbor letter (2001), (4) Phonometrics opposed the Rule 11 motion (2002), and (5) Phonometrics opposed the defendants' motions for summary judgment (2002). Given this sequence of events, we discern no abuse of the district court's discretion. *See Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir.1996) (upholding a decision to impose Rule 11 sanctions on counsel who filed only a notice of appearance, but failed to dismiss the action after he "had to know that the case was without a factual basis ... thereby forcing [the defendant] (and the court) to expend time and money on a summary judgment motion").

### B.

On appeal, Mr. Sutton argues that sanctions are inappropriate because (1) the claim construction stated in *Northern Telecom* is incorrect and (2) evidentiary support exists for Phonometrics' assertions of infringement. Yet it was the continued maintenance of these very positions that gave rise to the sanctions, and both are completely without merit.

As we noted in *Choice Hotels*, "we *held* in *Northern Telecom* that the limitation 'substantially instantaneous' meant the phone display device claimed by the '463 patent must give callers information about the cost of their long-distance call both during the call and after the call had ended[,]" and in *Northern Telecom* "[w]e stated this holding no less than four times." *Choice Hotels*, 21 Fed.Appx. at 911 (citations omitted) (emphasis in original). However sincere Phonometrics and Mr. Sutton may be in their belief that the construction of the limitation at issue stated in *Northern Telecom*, and reiterated and followed "[u]nder principles of stare decisis" in *Choice Hotels*[3] (*Choice Hotels*, 21 Fed.Appx. at 912) and by the district court in case after case brought by Phonometrics, is incorrect, their position is simply without legal merit.[4] *See Newell Cos.*

---

**3.** Contrary to Mr. Sutton's contention, our decision in *Choice Hotels* binds Phonometrics under the exception in Federal Circuit Rule 47 for collateral estoppel. Fed. Cir. R. 47.6(b) ("This rule does not preclude assertion of claim preclusion, issue preclusion, judicial estoppel, law of the case, or the like based on a decision of the court designated as nonprecedential."); *see also Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1337–38 (Fed.Cir.1999) (applying the Rule 47.6(b) exception in favor of a party where the case at hand "concern[ed] the identical issue of law decided [in that partys favor] by the court in an earlier appeal, namely claim construction"). The district court's reliance on *Choice Hotels* is limited to noting that *Choice Hotels* made it "absolutely clear that the claim construction of the '463 patent articulated in *Northern Telecom* applied to all cases construing the '463 patent." *Apr. 12 Order*, slip op. at 6. Nonetheless, we note that the substantive issue underlying the district court's decision to sanction is the same as that decided (adversely to Phonometrics) in *Choice Hotels*—namely, whether claim 1 of the '463 patent can be infringed in the ab-sence of any "record evidence showing that the accused device ... provides cost information [to the caller] during a call." *Choice Hotels*, 21 Fed.Appx. at 911. Accordingly, *Choice Hotels* binds Phonometrics (and its counsel).

**4.** Phonometrics incorrectly characterizes the claim construction stated in *Northern Telecom* as "diametrically opposite" that articulated in *Intellicall*. As noted above, the issue in *Intellicall* was whether the term "digital display" could include machine-readable devices. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed.Cir.1992). We noted there the limited scope of our decision:

> In some instances, the district court stated that the display was "to the caller." Appellant asserts that the court thereby added a limitation to the claim. If this was an error, and we are not persuaded that the court intended to so restrict the claim when the restriction was not necessary to its discussion, the error would be harmless. The claim does not, in any event, encompass machine readable information.

*v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988) (This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc.). Apparently, the district court is now as "baffl[ed]" as we were (*see Choice Hotels*, 21 Fed.Appx. at 911) at their insistence, in the face of settled precedent and the absence of availing evidence, in pursuing it.

As for the evidence, Mr. Sutton argues that, in at least some of the defendants' hotels, a combination of equipment exists that may display or at least have the capability to display on a monitor in a business office of the hotel the costs of calls in progress. Even assuming he is correct about the equipment some or all of the defendants possess, his infringement contentions are baseless. In *Northern Telecom*, we made clear that the display of the mounting call costs must be human-, not machine-, readable, that it must be displayed in an updated fashion on a substantially continuous basis, and that it must be to the caller. *Northern Telecom*, 133 F.3d at 1464–65. Mr. Sutton does not even argue that the monitor, if it exists, displays anything to the caller. In fact, by arguing, in this regard, only that "*Intellicall* is

binding precedent that 'to the caller' is not in claim 1[,]" he effectively admits that the alleged monitor does not. Thus the fact that the defendant in *Northern Telecom* was not a hotel company and sold different products than those accused here is irrelevant. Simply put, Mr. Sutton has never even articulated a viable theory under which any hotel defendant infringes the '463 patent. In the absence of at least such a theory, we cannot see how we could fail to sustain the district court's decision, particularly on deferential review.

### C.

Finally, it is appropriate to consider the propriety of the district court's decision in light of the fact that each of the above-described actions, with the exception of Intellicall's action for declaratory judgment against Phonometrics (finalized in 1992), was filed in the same court and assigned to the same judge, and that Mr. Sutton served as counsel for Phonometrics in each of Phonometrics' appeals (other than that in *Intellicall*) to this court. The district court and Mr. Sutton are both very familiar with the history of Phonometrics' attempts to enforce the '463 patent. At least since *Northern Telecom*, each deci-

---

*Id.* at n. 1. As we have previously explained, the subsequent holding (that in addition to being human(not machine-) readable, the "digital display" must, inter alia, be "to the caller") in *Northern Telecom* does not contradict *Intellicall* footnote 1:

> [W]e perceive no such contradiction. Phonometrics' contention that there is a conflict is premised upon its reading of footnote 1 in *Intellicall* as pronouncing that it would be erroneous to include a to the caller limitation in the construction of the phrase digital display. We disagree with that reading. Footnote 1 clearly does not state that such a construction would be erroneous. Phonometrics has apparently overlooked the word if and the final sentence in footnote 1, which read, *If* this was an error, ... the error would be harmless.

The claim in any event does not encompass machine readable information. Rather than suggesting that to the caller should not be part of the claim construction, as Phonometrics contends, footnote 1 actually indicates that the opposite may be true, as the opinion clearly holds that the display must be human readable—not merely machine readable. Phonometrics' creative reading of the cases is thus wholly without merit. Moreover, even if the *Intellicall* panel had believed that the claim did not include a to the caller limitation, any expression of that belief was, as the *Northern Telecom* opinion states, dictum, as it was not essential to the holding in that case.

*Phonometrics, Inc. v. Westin Hotel Co.*, 319 F.3d 1328, 1332 (Fed.Cir.2003) (citation omitted) (emphasis in original).

sion on the merits of Phonometrics' infringement claims in each action, whether involving a hotel defendant or not, consistently applied and was resolved by the *Northern Telecom* claim construction.[5] Each such decision conveyed the same message: in the absence of evidence that the accused product "(1) ... provides the caller with real time, accurate information about the cost of the call via [visual] digital display as the long distance charges accrue *during* the call; and (2) ... reflects the total cost of the call via the same digital display *after* the call has been terminated[,]" there is no infringement of claim 1 of the '463 patent. *Northern Telecom*, 133 F.3d at 1465 (emphasis in original). And each presented Phonometrics and its counsel not merely the opportunity, but the obligation, to reconsider the viability of Phonometrics' claims in light of the evidence, and to refrain from further prosecution. Phonometrics never chose the latter course, even when that opportunity was specifically presented (after our opinion issued in *Choice Hotels* ) by (1) the district court's inquiry as to Phonometrics' intention to continue its lawsuit, (2) the Rule 11 safe harbor letter, (3) the Rule 11 motion, and (4) the joint motion for summary judgment. We cannot regard as an abuse of discretion the district court's decision, made with the benefit of the history of all

of Phonometrics' efforts to enforce the '463 patent, to award the fees incurred in bringing the Rule 11 motion against counsel who had the same benefit.[6]

Accordingly, there was ample basis for the district court's decision to impose sanctions in this case. In view of all of the foregoing, and especially given the highly deferential abuse-of-discretion standard of review, we uphold the district court's determination.

## II.

■ We further find no abuse of discretion in the district court's rejection of Mr. Sutton's challenge to the Rule 11 motion as untimely. Although the court determined that Phonometrics' continued prosecution of its claims after *Northern Telecom* was frivolous, it held that the defendants' decision to wait until after our opinion issued in *Choice Hotels* was "reasonable in light of (1) the fact that Northern Telecom [sic] did not specifically involve a hotel and (2) [the district court's] decision to stay all Phonometrics cases pending the appeal of *Choice Hotels*." *Apr. 12 Order*, slip op. at 6. The district court further stated that *Choice Hotels* made it "absolutely clear that the claim construction of the '463 patent articulated in *Northern Telecom* applied to all cases construing the '463 pat-

---

5. Our previous dispositions in Phonometrics' favor, noted by the dissent, were not on the merits. *See, e.g., Phonometrics, Inc. v. ITT Sheraton Corp.*, 232 F.3d 914, 2000 WL 576492, at *1 (Fed.Cir.2000) ("*Sheraton II* ") (vacating an award of attorney fees granted pursuant to 35 U.S.C. § 285 based on our reversal (in *Phonometrics, Inc. v. ITT Sheraton Corp.*, 2000 WL 286624, at *1 (Fed.Cir.2000) ("*Sheraton I* ")) of the underlying dismissal of Phonometrics' claim because the district court had improperly required specific fact pleading); *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir.2000) (reversing dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to specifically plead).

6. We, of course, *review* the district court's decision. Thus, the issue is not whether we would award sanctions, but whether, applying the appropriate, deferential review standard, we must sustain the district court's decision. Although disagreeing with our decision in this regard, nowhere does the dissent state how the district court's decision to award fees is "based on clearly erroneous findings of fact, ... based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful." *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed.Cir.1998) (en banc) (describing the circumstances under which an abuse of discretion may be found).

ent" and that Phonometrics' "refusal to dismiss its claims after *Choice Hotels* was simply an egregious violation of Rule 11." *Id.* Given the district court's broad discretion in deciding whether to impose sanctions under Rule 11, we discern no abuse. We note in this regard that the award was limited to the attorney fees expended in connection with the Rule 11 motion brought after *Choice Hotels* was decided in 2001. No fees awarded cover the period between *Northern Telecom* in 1998 and *Choice Hotels* in 2001.

### III.

■ To the extent Mr. Sutton contends that the district court's imposition of sanctions on him (as opposed to the party-plaintiff, Phonometrics) was improper, we reject that contention. The decision to impose sanctions on counsel, like the decision to impose sanctions at all and the amount of any sanction, are committed to the district court's discretion. *See Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. 2447 ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district courts Rule 11 determination."). According to the drafters of the 1993 revision to Rule 11:

The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation.

Fed.R.Civ.P. 11 advisory committee's note. Here, the district court specifically determined that "[s]uch sanctions are to be levied against [Phonometrics'] counsel, who refused to dismiss the claims and who continued to advocate clearly untenable positions before this Court." *Apr. 12 Order,* slip op. at 7. Given our limited authori-ty to reverse discretionary decisions, and especially given the district court's specific determination that Mr. Sutton was responsible for the Rule 11 violation, we cannot properly disturb its decision.

We note also that Mr. Sutton is a registered patent attorney having extensive practice experience, including district court infringement litigation. The viability of Phonometrics' claims against the defendants turns on the significance of legal precedent and the application of a patent claim construction made in 1998 and reconfirmed in 2001 to accused products. In light of these facts, the district court's allocation of responsibility for the violation was appropriate.

### IV.

■ Likewise, we discern no abuse of discretion in the district court's determination of the amount of fees awarded as a sanction. Mr. Sutton challenges the size of the award in two respects. First, he questions the district court's acceptance of "reconstructed" bills submitted by one defendant, Cendant Corp., that include entries redacted to exclude work done on tasks unrelated to the Rule 11 motion but that, to his eyes, appear to bear the original (unredacted) time amounts and charges. The district court specifically considered Mr. Sutton's argument and regarded as "sufficient" Cendant's explanation that "it considered the redactions when listing the amount of time expended on the motion for sanctions." *June 10 Order,* slip op. at 7 (noting "if a time entry includes both redacted work and work expended on the motion for sanctions, [Cendant] only seeks an award for the hours actually expended on the motion for sanctions"). Mr. Sutton asserts that the "type font" for the time and dollar amounts in the bills Cendant submitted "appear[s]" to be the pre-redaction font. However even

if we agreed, we could not substitute our assessment of the credibility of Cendant's supporting documentation for that of the district court.

Second, Mr. Sutton challenges the portion of the total sanctions award made to the six defendants who did not agree to settle the present litigation "since it was for work performed by counsel for the settling defendants, not the remaining defendants." It is undisputed, however, that the challenged portion represents the amount the six non-settling defendants contributed to the preparation (by the attorneys for the settling defendants) of the Rule 11 motion, and that the district court calculated the award to the settling defendants by deducting the challenged portion from the fees incurred in preparing the motion. Therefore Mr. Sutton's contentions are unfounded.

## CONCLUSION

Because the district court did not abuse its discretion in imposing Rule 11 sanctions on counsel for Phonometrics in the amount awarded, we

*AFFIRM.*

PAULINE NEWMAN, Circuit Judge, dissenting.

It is now clear that Phonometrics and its counsel must recognize that the infringement action cannot succeed against a hotel that does not provide real-time display of cumulative telephone charges to the user. However, this critical fact was not manifest until after this court's unpublished decision in *Phonometrics, Inc. v. Choice Hotels Int'l, Inc.*, 21 Fed.Appx. 910, 2001 WL 1217219 (Fed.Cir.2001). *Choice Hotels* is a nonprecedential decision and, although it binds the parties, there is a leap from that uncitable ruling to the award of Rule 11 sanctions for declining to withdraw other litigation against other parties

whose infringement status was still being explored.

My colleagues on this panel rely on earlier decisions raising different, albeit related, issues of infringement, specifically, *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384 (Fed.Cir.1992), and *Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459 (Fed.Cir.1998). In order to rely on these decisions to support today's sanctions, they have been reinterpreted to have a meaning they did not have when they were decided. Thus the majority opinion states that "in *Intellicall*, we affirmed a grant of summary judgment of noninfringement of the '463 patent, holding that the term 'digital display' does not include machine-readable devices." Maj. op. at 3–4. However, in *Northern Telecom* this court restricted that interpretation to the *Intellicall* facts:

> [T]he limitation "digital display" does not include machine readable devices, or information given to a computer for later access. Any construction of other limitations in claim 1, including any construction of those limitations at issue here, that we or the district court made in *Intellicall* was merely dictum, …

133 F.3d at 1464 (citation omitted). Thus in 1998 this court refused to give *Intellicall* the scope that the panel majority now gives it to support a punitive award made a decade later.

In turn, *Northern Telecom* was limited to equipment manufacturers, as the district court recognized when it stated that: "At that point in the litigation, [Phonometrics'] argument was not completely baseless because there was no precedent from the Federal Circuit requiring such display to the caller." Order of April 12, 2002.

Not until the nonprecedential decision in *Choice Hotels* did this court present an opinion on the merits of the question of infringement by hotels based on the nature

of the display to the user. The Rule 11 sanctions were not requested until Phonometrics thereafter chose to continue this action against these defendants, counsel telling the district court that the Federal Circuit decision was "mistaken." Perhaps the fact that we did not give the *Choice Hotels* decision precedential force, despite the extensive ongoing litigation, gave hope to Phonometrics that we were uncertain of the broad applicability of that ruling. Rule 11 is a chilling punitive action, and is not properly based on positions that were not known to be false or irresponsible when they were taken.

The panel majority nonetheless relies on *Intellicall* and *Northern Telecom,* decisions that the district court recognized as not deciding the issue of hotel room displays. That *Choice Hotels* cited *Northern Telecom* "four times," as the majority opinion stresses, does not endow *Northern Telecom* with sanction-generating prescience as to future decisions, particularly when *Northern Telecom* itself disposed of a similar assertion for *Intellicall* as "merely dictum." 133 F.3d at 1464. In addition, this court continually overturned the district court's attempts to dispose of the hotel cases under Rule 12(b)(6). *See, e.g., Phonometrics, Inc. v. ITT Sheraton Corp.,* 2000 WL 286624 (Fed.Cir. Mar.16, 2000) (unpublished, non-precedential); *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790 (Fed.Cir.2000). Phonometrics' counsel's optimism that this court would distinguish *Northern Telecom,* just as *Northern Telecom* distinguished *Intellicall,* was not so unreasonable as to warrant Rule 11 sanctions. It was not a violation of Rule 11 to continue to press the client's cause until the Federal Circuit produced a precedential opinion on the merits of the hotel issues.

In support of the Rule 11 punishment here imposed, the majority opinion relies on unpublished decisions, designated by the court as non-precedential and non-citable. That status is not overcome by listing a Westlaw page or an unofficial Appendix. These decisions are not grounds of stare decisis, do not evidence bad faith, and do not import any of the demanding criteria of Rule 11. From the court's contrary holding, I respectfully dissent.